THE PEOPLE OF THE STATE OF NEW YORK ex rel. ISIDORE KAGANOVITCH, Appellant, *v.* WALTER H. WILKINS, as Warden of Attica State Prison, Respondent.

Fourth Department, May 13, 1965.

*Stanley A. Moskal, Jr.*, for appellant.

*Louis J. Lefkowitz, Attorney-General (Frederick T. Devlin* of counsel), for respondent.

GOLDMAN, J. In this appeal from a dismissal of his application for a writ of habeas corpus relator's petition urges three grounds. The claim that the indictment was defective in that it charged him with assault, second degree, with intent to commit the crime of sodomy, which was a misdemeanor rather than a felony, has no merit. We view the other matters in his petition, relating to the failure of the sentencing court to have had submitted to it for its consideration a psychiatric report in compliance with section 2189-a of the Penal Law, and the failure of the penal institutions in which he has been incarcerated to have given him any psychiatric treatment, as mandated by the statute under which he received a one day to life sentence, as raising serious questions which require further consideration and comment. The Attorney-General's brief completely ignores these issues, and the County Court hearing on this application failed completely to explore these contentions.

Relator was arrested in Kings County for alleged acts of sodomy with a 12-year-old male child and was indicted in 1953 on five counts, all involving these acts. He pleaded not guilty. Although the record before us is incomplete as to the various steps which were taken thereafter, it is clear that on September 24, 1953 relator was sent to the Kings County Hospital for some form of psychiatric examination and was reported insane. The County Court thereupon committed him to Matteawan State Hospital. On February 24, 1955 he was returned to the Kings County Court, certified as sane, and he withdrew his plea of

not guilty and pleaded guilty to the fourth count of the indictment charging him with assault in the second degree with intent to commit the crime of sodomy. He was once again sent to Kings County Hospital for observation pending sentence. The record contains no report or certificate from the hospital indicating that relator received a psychiatric examination pursuant to section 2189-a of the Penal Law, and there is no proof that the court had or considered such a report before it sentenced relator. The record shows that on April 6, 1955, upon motion of the relator's retained counsel, the "report of Psychiatric Division of Kings County Hospital, finding defendant sane is confirmed". On May 16, 1955 Kings County Court ordered that relator "be imprisoned in the Sing Sing State Prison at Ossining, N.Y., at hard labor, under an indeterminate sentence, the maximum of such imprisonment to be his natural life and the minimum thereof one (1) day". It is not contradicted that the year relator was sent to Sing Sing the psychiatric clinic at that prison was closed after having been in operation for more than four years (N. Y. Legis. Doc., 1956, No. 84). The record does not disclose when relator was transferred from Sing Sing to Attica Prison where he is presently held. The claim of relator's counsel that Attica Prison does not now have nor has ever had any facility for psychiatric treatment during the time of relator's confinement therein is not refuted.

Relator's contention that he was not given a psychiatric examination pursuant to section 2189-a of the Penal Law was not explored at the Wyoming County Court hearing. Relator's assertion that the report of the Kings County Hospital made after his guilty plea "does not disclose that relator [was] a psychopath or of violent character" and was "bare of any descriptive sexual abnormality" finds support in the only record from that court dealing with the subject which simply confirmed "a finding defendant sane". This notation supports the probability that the examination was in compliance with sections 662 and 870 of the Code of Criminal Procedure, indicating relator's capability of understanding the charge and making his defense, rather than in compliance with section 2189-a of the Penal Law.

If the further hearing which we are ordering should confirm relator's position, we would feel constrained to remit the matter to Kings County Court for proceedings consistent with our memorandum in People v. Kinney (19 A D 2d 576) where we wrote: " Section 2189-a specifically provides that no person shall receive the indeterminate sentence 'until a psychiatric examination shall have been made of him and a complete written report

thereof shall have been submitted to the court.' '' (See, also, *People* v. *Smith*, 22 A D 2d 333.) The statute requires such an examination '' in every case in which a sentence of from one day to life may be imposed, regardless of whether such a sentence is in fact imposed.'' (*People* v. *Spry*, 5 A D 2d 835.)

Even if the proper psychiatric report was before the sentencing court, we would still be greatly concerned by the failure of the Attorney-General to refute, or in any manner deny, the categorical and unequivocal statement made, in substance, several times in relator's petition '' that during the nine (9) years imprisonment, that at NO time said relator received any kind of psychiatric treatment or any modern rehabilitation or any rehabilitation, except, imprisonment at hard labor ''. The Appellate Division of the Third Department was confronted with almost the identical situation in *People* v. *Jackson* (20 A D 2d 170). The opinion by then Presiding Justice BERGAN ably and clearly points out the history and the reasons behind adoption of section 483-b of the Penal Law (L. 1950, ch. 525), which provided for this new method of punishment and treatment in sex crime cases. As stated (p. 172) of that opinion: '' It was envisoned, therefore, as the title of the statute itself suggests, that treatment was an integral and essential part of a program to be followed in the penal system. Where the offender could be treated with some reasonable chance of improvement, it was contemplated that under a sentence so flexible that it might last for his natural life, he would be able to receive adequate treatment and would be discharged if improved to the extent it would be safe to release him.'' It is of important significance that, after the court in *People* v. *Jackson* withheld its decision on that part of the application addressed to the sentence, a psychiatric examination of Jackson was made by two qualified psychiatrists and resulted in a finding that the defendant was not dangerous if released and '' that the sooner custodial care is stopped the better he will be ''. The Third Department modified the judgment of conviction on the law and the facts and in the interests of justice, and remanded the matter to the County Court for further proceedings in accordance with its memorandum which clearly indicated that the one day to life imprisonment was not warranted (*People* v. *Jackson*, 21 A D 2d 843).

The relator's petition, also uncontradicted, recites that he appeared before the Parole Board on four occasions and the '' Board completely ignored Relator for parole despite [report] of supervising psychiatrist, Dr. Reynolds of Attica Prison, whose recommendation was submitted to the Board of Parole

that Relator was not dangerous and a good risk, that Relator should be released on parole ". The new hearing which is to be had should investigate this statement and should secure such reports concerning relator as Attica Prison has and, if possible, should examine as a witness Dr. Reynolds who is a staff member of the prison.

If, as claimed, the relator has been in custody approximately 12 years under the circumstances set forth in his petition, this is a direct violation of the recommendations of the committee whose Report to Governor Dewey and the Legislature on March 15, 1950 was the basis for the statutory enactment. The committee made it clear that a very essential and fundamental responsibility that " the law shall impose upon the Department of Mental Hygiene, the Department of Correction and the Board of Parole [is] the solemn duty of giving his case prompt and intensive study, to be followed where feasible by therapeutic treatment, to the end that such offender may be rehabilitated and released whenever it may appear that he is a good risk on parole. When serving under this form of sentence, it should be required that a prisoner receive thorough psychiatric examination not less than once every two years, and consideration by the Parole Board " (N. Y. Legis. Doc., 1950, No. 56, p. 44). The relator's claim that the statute providing for this type of sentence is unconstitutional was resolved by *People ex rel. Schaap* v. *Martin* (6 N Y 2d 371). Notwithstanding that decision's determination that the statute is constitutional, it necessarily follows that if there is a complete failure to carry out the procedures for psychiatric examination and treatment which are so vitally a part of the statutory design, it may well be argued that the imposition of the one day to life sentence, under these circumstances, is a violation of relator's constitutional rights under the Eighth Amendment to the United States Constitution and section 5 of article I of the New York State Constitution which prohibit the infliction of " cruel and unusual punishments ".

It may not be inappropriate to suggest that the entire problem of sexual psychopaths should have further and continuing study to devise some system of dealing with them which has a more enlightened approach than the program under which we are now operating. The inadequacy of current legislation dealing with the problem deprives the sentencing court of any alternative other than physically protecting society from the violator by the method of isolation. As of 1959, 26 States (and New York is not among them) and the District of Columbia had enacted legislation (Sexual Psychopath Statutes: Summary and Analy-

sis, The Journal of Criminal Law, Criminology and Police Science, vol. 51, pp. 215, 228) which recognized that the sexual psychopath can neither be termed normal nor legally insane and, therefore, it naturally follows, that he requires special consideration not only for his own welfare but for the public's as well. While this represents a new approach, directly involving the resources of modern psychiatry and psychology, it is indeed consonant with our traditional concept of individualized justice in that it substitutes civil commitment, treatment and segrega-tion of the unfortunate sex deviate rather than criminal punish-ment. If we do not make provision for medical and scientific facilities to deal with sex offenders, then we must face up squarely to the moral issue involved in the sentencing of these persons to life imprisonment. Adequate psychological and psychiatric services are indispensable to the whole concept of " one day to life " sentences and without them the "one day " is meaningless and the " life " may well be the end result.

This matter should be remanded to the Wyoming County Court for a full and complete hearing dealing specifically with the questions of compliance with section 2189-a of the Penal Law and the extent of the psychological and psychiatric treatment given relator during his many years of imprisonment. Relator should further be given a complete psychiatric examination by a duly qualified psychiatrist to determine whether it would be dangerous to release him and whether he is now capable of rejoining society on the outside.

WILLIAMS, P. J., HENRY, NOONAN and DEL VECCHIO, JJ., concur.

Order unanimously reversed and matter remitted to Wyoming County Court for further proceedings in accordance with the opinion.