[Crim. No. 13886. Second Dist., Div. Five. Apr. 10, 1968.]

In re LEWIS JONES on Habeas Corpus.

Richard A. Ibanez, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Respondent.

KAUS, P. J.—In October 1956, petitioner Lewis Jones shot and killed his daughter. He was charged with murder in Fresno County. Incapable of cooperating in the preparation of a defense, he was committed to the Atascadero State Hospital, which is located in San Luis Obispo County. (Pen. Code, § 1370.) In July 1958, he was found sufficiently sane to stand trial. On September 16, 1958, he was found not guilty by reason of insanity. The court further found that Jones had not fully recovered his sanity and, pursuant to the provisions of section 1026 of the Penal Code, directed that he be reconfined at Atascadero "for the period prescribed by law and until he is legally discharged."

Section 1026a of the Penal Code provides that a person committed under section 1026 may apply for release in the superior court in the county in which he is confined or in the county from which he was committed. No hearing on such an application is allowed until he shall have been confined for "not less than 90 days." If such a hearing results in a finding "adverse to releasing such person" he may not file a further application until one year has elapsed from the last hearing.

On October 8, 1962, Jones appeared in the San Luis Obispo Superior Court having filed a petition for a writ of habeas corpus. An assistant district attorney appeared for the superintendent of the Atascadero State Hospital. Jones was not represented. After testimony by Doctor Sterling W. Morgan and other oral and documentary evidence was introduced, Jones was found not to be restored to sanity. He was remanded to the care and custody of the Atascadero State Hospital for further care and treatment.

An identical proceeding took place in San Luis Obispo on June 1, 1964, except that the medical witness was a Doctor Leiva. Again Jones was not represented by counsel and again the court found that he had not been restored to sanity and was in need of further care and treatment.

Neither of the two petitions on the bases of which the 1962 and 1964 hearings were held is included in the record before us.

Having twice failed in San Luis Obispo, the county of his confinement, Jones then turned to Fresno, the county from which he had been committed.[1] There, on March 22, 1965, he filed a petition for a writ of habeas corpus in which he alleged, *inter alia*: "I do not feel that I am insane or mentally ill any longer, and I feel that I should be released. I also feel that I am being kept and held here at Atascadero State Hospital, when there is no longer any necessity or legal valid reason. . . . I hope to obtain my release. I also want a sanity hearing." That petition was denied without a hearing on the ground that defendant was detained in San Luis Obispo County and not in Fresno County.

On July 11, 1966, Jones filed another petition for a writ of habeas corpus in Fresno, again alleging that he had regained his sanity and was "no longer insane or psychotic in any way." In response to that petition the Fresno court ordered Jones brought to Fresno, appointed counsel for him and ordered that he be examined by a psychiatrist. The examination was had, a report was made and a copy furnished to defendant and his counsel. On September 26, 1966, both then asked leave of court to withdraw the pending petition and it was dismissed "without prejudice."

It appears that the judge who presided at the September 26, 1966, hearing thereafter, on January 12, 1967, received a request for another appearance before the Fresno court. He then communicated with Jones' attorney and with the Atascadero State Hospital. He was advised by the hospital that petitioner's "mental condition was still such that he was dangerous." The judge then passed this information on to Jones' attorney and the matter was apparently dropped there. The record before us does not show just what Jones alleged in his January 12, 1967, petition nor whether it was formally denied.

The next petition was filed in Fresno on June 27, 1967. By a minute order dated the same day it was summarily denied. However, on June 29, 1967, the following letter was addressed to Jones by the Fresno County Clerk:

"Dear Sir:

"Your Petition for Writ of Habeas Corpus was denied on June 27, 1967. Enclosed is a copy of Minute Order designat-

---

[1]On June 4, 1963, Jones had filed a petition for a writ of habeas corpus in Fresno which was denied the same day without a hearing. and "without prejudice to filing Writ of Habeas Corpus in any other court, or to apply for release under the provisions of 1026a of the Penal Code."

ing same. You should file your Petition in the office of the County Clerk in San Luis Obispo as you are residing in that County. I am also enclosing your application for Writ so that you may file it in said County."

Although one would gather from the last paragraph of his letter that the petition was physically returned to Jones, the Fresno docket sheet contains the following notation: "June 28, 1967. Filed in error. Forward to San Luis Obispo County." Nothing was ever received by the San Luis Obispo County Clerk.

Finally, on July 18, 1967, Jones filed a petition for a writ of habeas corpus in the Court of Appeal for the fifth district in which he alleged that his confinement at Atascadero was illegal since he was "now sane" and was being denied the "rights of having a sanity hearing." He also complains that he had been denied counsel "in a lower court," that he could not get a fair hearing in San Luis Obispo County and that he had been recommitted to Atascadero "on or about October 6, 1966" without having had a completed sanity hearing.

This last petition was then transferred from the fifth district to this, the second district. (Cal. Const., art. VI, § 12.) On Jones' request we then appointed his present counsel and issued an order to show cause.

■■■ Before us, Jones does not claim to be entitled to an immediate discharge. He only contends that he is entitled to a valid hearing on the question of his present sanity, suggests that we appoint a referee to take evidence on that issue and argues that the applicable standard for continued confinement —none is set forth in section 1026a—should be a "reasonable possibility that the applicant would be a menace to others and to himself if released from confinement."

The Attorney General views the petition for habeas corpus as an attempt to review the 1966 Fresno proceedings—in which view, we believe, he is mistaken. He argues correctly that ordinarily original applications for hearings under section 1026a should be addressed to the trial courts designated in that section. Finally he submits, in the most elaborate portion of his return, that applications for release under section 1026a are insufficient if they contain nothing but conclusory allegations of present sanity. Petitioners should be compelled to spell out "the details of [their] circumstances" before they are entitled to a hearing either in this court or below. It is then assumed that Jones has never done this.

*The 1966 Fresno Proceedings.*

In September 1966 Jones voluntarily withdrew his application in Fresno and it was then "dismissed without prejudice." The only meaning of that order which makes any sense is that the dismissal was not to be considered an adverse finding on the issue of present sanity. Such a finding, of course, would have forced Jones to wait one year before making a further application. It is clear from section 1026a itself that findings adverse to the applicant result only in a very limited "prejudice," namely the one year waiting period. It would have been quite unnecessary for the court to make its order "without prejudice" if all it intended to accomplish was to allow Jones to file another application a year hence. The statute does that.

We therefore, as Jones' counsel argues, must consider the 1966 Fresno proceedings as a nullity. Whatever the petition pending before us attacks, those proceedings are not it.

### Right to Counsel.

Twice, in 1962 and 1964, the San Luis Obispo Superior Court, on what it must have thought to be adequate allegations, granted Jones a hearing on his then sanity. He was not represented by counsel nor does the record affirmatively show a waiver. (*Carnley* v. *Cochran*, 369 U.S. 506, 514 [8 L.Ed.2d 70, 76, 82 S.Ct. 884]; *In re Woods*, 64 Cal.2d 3, 7 [48 Cal. Rptr. 689, 409 P.2d 913]; *In re Johnson*, 62 Cal.2d 325, 334 [42 Cal.Rptr. 228, 398 P.2d 420].) If the Constitution of the United States entitled him to counsel, the proceedings were invalid. (*People* v. *Coffey*, 67 Cal.2d 204, 218-219 [60 Cal. Rptr. 457, 430 P.2d 15].)

*Specht* v. *Patterson*, 386 U.S. 605, 608-609 [18 L.Ed.2d 326, 329, 87 S.Ct. 1209], involved a proceeding under the Colorado Sex Offenders Act, under which law Specht was given an indeterminate term of confinement. The court had acted on the basis of a psychiatric report given to it before sentencing. "But there was no hearing in the normal sense, no right of confrontation and so on." Noting that "[t]he punishment under the . . . Act is criminal punishment even though it is designed not so much as retribution as it is to keep individuals from inflicting future harm . . . ." the court held as follows: "Due process, in other words, requires *that he be present with counsel,* have an opportunity to be heard, be confronted with witnesses against him, have the right to cross-examine, and to offer evidence of his own. . . ." (*Ibid.,* p. 610 [18 L.Ed.2d at p. 330]. (Italics added.)

Although *Specht* was decided well after Jones' second San Luis Obispo hearing, we have no reason to believe that it is less retroactive than *Gideon* v. *Wainwright*, 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]. (*Pickelsimer* v. *Wainwright*, 375 U.S. 2 [11 L.Ed.2d 41, 84 S.Ct. 80]; *In re Woods*, 64 Cal.2d 3, 5-6 [48 Cal.Rptr. 689, 409 P.2d 913].) The result of the court's finding that Jones had not been restored to sanity and was in need of further care and treatment was an indeterminate sentence in the same sense as the commitment suffered by Specht.[2] He therefore has never had a constitutionally valid hearing on his 1962 and 1964 applications for release, nor does the record demonstrate that at any time; thereafter either of the two superior courts involved made a finding that his sanity had not been restored.[3] His confinement without such a hearing is illegal.

### The Standard for Release.

In *People* v. *Mallory*, 254 Cal.App.2d 151 [61 Cal. Rptr. 825], the court rejected the M'Naughton test as being the one appropriate when the question of restoration of sanity is under consideration.

*Mallory*, however, does not state precisely what the appropriate standard is. Research by Jones' present counsel has discovered that our statutes actually furnish the standard, if rather obliquely. Section 6761 of the Welfare and Institutions

---

[2] If it is suggested that the denial of an application for release does not result in an indeterminate sentence because the applicant can try again in a year, it is legitimate to ask whether he will be entitled to counsel at the hearing which will result from the future application. If the answer is ''yes''—as it must be for the suggestion to have any merit —the point is self-defeating. If the answer is ''no,'' its lack of merit is only more obvious. Jones, of course, was unrepresented at both the 1962 and 1964 hearings.

[3] It should be pointed out that under the statutory scheme, an inmate's first application for release results in the first hearing at which the inquiry focuses on his present sanity. At the trial of the insanity plea as a defense to the criminal charge, the defendant's present sanity is not in issue as such. To the extent that it may be circumstantially relevant to the issue of his sanity at the time of the commission of the offense, the realities of the situation at the trial hardly induce a defendant to try to establish present sanity. Yet section 1026 of the Penal Code allows the trial court to commit a defendant to a state hospital for a minimum of 90 days without any further hearing on his present condition. Although the constitutionality of this procedure was upheld in *In re Slayback*, 209 Cal. 480, 485-489 [288 P. 769], we do not believe that the Supreme Court assumed that at the hearing which follows the minimum period of confinement the defendant would not be afforded his full constitutional rights. (Cf. *Bolton* v. *Harris*, 395 F.2d 642, decided February 16, 1968.)

Code[4] provides, under certain conditions, for parole of persons committed under section 1026 who would have been eligible for probation, when the superintendent is of the opinion "that the person has improved to such an extent that he is no longer a menace to the health and safety of others. . . ." We believe that the same test is appropriate for the court in hearings under section 1026a.

### Sufficiency of Allegations.

 We have mentioned that the petitions on the basis of which Jones was given hearings in 1962 and 1964 are not part of the record before us. Nevertheless, it may safely be assumed that the hearings which resulted in findings that Jones' sanity had not been restored were held in response to petitions in which the contrary was alleged.

The Attorney General submits that this is not enough. He argues that persons confined under section 1026 must allege the grounds which entitled them to release with particularity. Yet he never even suggests how a person, particularly a layman, can allege the "fact" of his restoration to sanity with any more particularity than by saying just that.

The problem is, after all, not what the defendant must prove, but merely what he must allege in order to get a chance to do so.[5]

In *Stewart* v. *Overholser,* 186 F.2d 339, 340 [87 App.D.C. 402], the petitioner had alleged that he " '[was] of sound mind as he knows right from wrong.' " The court held that the allegation was adequate, that the addition of the words "as he knows right from wrong" did not convert his allegation into "something less than one of soundness of mind,"

---

[4]The section was repealed by Stats. 1967, ch. 1667, which becomes operative on the sixty-first day after the adjournment of the 1968 Regular Session. After that date the substance of the provisions of section 6761 will be found in section 7375 of the same code.

[5]In *In re Slayback,* 209 Cal. 480, 489 [288 P. 769], one of the very few cases interpreting 1026a, it was said: "However, as we have seen, the petitioner alleges that she has fully recovered her sanity, and that at the date of said commitment she was and now is sane. She, therefore, contends that, notwithstanding the regularity and validity of her original commitment, she is now entitled to be restored to her liberty, and that any further detention of her under said commitment is illegal and without warrant of law. The allegation of the petitioner that she has recovered her sanity is denied by the respondent. Nevertheless, the petitioner insists that she is at least entitled to a hearing upon the issue of her present sanity and that upon proof thereof this court is in duty bound to discharge her from her present imprisonment. *Undoubtedly the petitioner is correct in her contention* unless such a hearing is legally withheld from her by the terms of section 1026a of the Penal Code enacted in 1927. . . ." (Italics added.)

although there may be some type of insanity accompanied with an ability to distinguish right from wrong. "Skill and perfection in petitioner's method of alleging sanity is [*sic*] not required." It was held that the district court had erred in denying a hearing on the question of sanity.

The Attorney General points out that Atascadero State Hospital is located in a small county, that the "1026" population at Atascadero is slightly below two hundred inmates and that a rule that a plenary hearing must be had on the mere allegations of restoration to sanity would unduly burden available facilities. "To accord each such inmate an absolute right to a hearing every year based only on the mere assertion of sanity would severely tax the time and capacity of the superior court in that county, even though the inmates could file them also in the committing county. Hearings may necessitate the appointment of counsel and possibly of independent psychiatrists, adding extra strain."

 The confinement of persons committed under section 1026 is not punishment. We have no doubt that under the present administration of the hospital they are given hearings on the initiative of the superintendent as soon as he and his staff feel that they have been restored to sanity. (Pen. Code, § 1026.) Indeed the very fact that this undoubtedly occurs makes it very doubtful that it will be necessary to hold two hundred adversary hearings per year.[6] In addition there may be inmates wise enough not to seek release. The temptation to ask for a hearing just to get a trip to San Luis Obispo can be removed by holding hearings on hospital premises. If such hearings as must be held cause an undue strain on the facilities of the local superior court, the Chief Justice, as Chairman of the Judicial Council, has ample power to send help. (Cal. Const., art. VI, § 6.)

We believe that none of the inconveniences which may follow from our holding are insurmountable. They are mere nuisances compared to the possibility that a friendless person, who in fact is entitled to his freedom, does not even get a hearing because he cannot find the artful words with which to ask for it.

Finally it is urged that annual hearings may adversely affect the therapeutic relationship between psychiatrist and patient. That may be true, but the Legislature has decreed

---

[6]We assume that hearings initiated by the director are less adversary and consume less time than those which are requested by inmates and resisted.

that patients who believe that they have been restored to sanity are entitled to an annual review.

## *Disposition.*

Although this court has the power to order a reference, as Jones urges that we should, such a procedure is far more cumbersome than a hearing in the superior court. Section 69109 of the Government Code gives us the power to issue writs of habeas corpus and to make them returnable before any superior court in this district. We think that this is the right thing to do in this case.

Naturally, the inquiry at the hearing below will be whether petitioner is sane now, not whether he had—temporarily or permanently—recovered his sanity in 1962 or 1964, at the time of the earlier abortive hearings.

The petition for a writ of habeas corpus is granted. The writ is made returnable before the Superior Court for the County of San Luis Obispo, at such time and place as that court may direct.

Hufstedler, J., and Stephens, J., concurred.

A petition for a rehearing was denied April 24, 1968, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied June 5, 1968.