[No. AO16376. First Dist., Div. Two. Jan. 21, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
LEROY WOODSON, JR., Defendant and Appellant.

2

COUNSEL

Sharon L. Flin, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

McKIBBEN, J.*—In April 1981, appellant was charged with two counts of violating Penal Code section 476a (bad checks). Ultimately he was found not guilty by reason of insanity (Pen. Code, § 1026) by the court. He was committed to Napa State Hospital for the maximum term of three years, eight months.

On August 20 and November 12, he filed petitions for writs of habeas corpus alleging that his sanity was restored as provided in Penal Code section 1026.2. Thereafter, the court appointed a psychiatrist to examine appellant pursuant to

*Assigned by the Chairperson of the Judicial Council.

Evidence Code section 1017. Later two more psychiatrists were appointed to examine him.

Appellant waived a jury trial; the court after hearing the testimony of appellant and two psychiatrists determined that appellant's sanity had not been restored.

 The question on this appeal is what standard should be applied to determine whether a committed person's sanity has been restored under the provisions of section 1026.2 of the Penal Code.[1] There is no standard or test of sanity set forth in the section; the burden of proving restoration of sanity is on the appellant.

Appellant contends that the standard to be used in section 1026.2 is the same used in section 1026.5, subdivision (b)(1),[2] and cites *In re Franklin* (1972) 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465]; *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097] and *In re Jones* (1968) 260 Cal. App.2d 906 [68 Cal.Rptr. 32] in support of his position.

In *Franklin, supra,* the primary issue dealt with the mandatory 90-day prehearing detention requirement in former Penal Code section 1026a. Such a requirement remains in the section but is not at issue here. The court there did state at page 145 that ". . . relevant standard . . . is not whether the person committed is no longer legally insane, but whether he has improved to the extent that he is no longer a danger to the health and safety of others, including himself."

*Franklin, supra,* 7 Cal.3d 126, cites *Jones, supra,* 260 Cal.App.2d 906, as authority for the standard. In *Jones, supra,* the primary question was whether or not he was entitled to a hearing on his present sanity. In both cases, the parties had been found not guilty of crimes of a violent nature; in *Jones, supra,* it was murder and in *Franklin, supra,* it was a false bomb report.

Appellant's other authority *Moye, supra,* 22 Cal.3d 457, also had an act of violence (felony hit-run driving) underlying the Penal Code section 1026 proceeding. In it one of the questions was whether or not a person found not guilty by reason of insanity could be institutionally confined beyond the maximum

---

[1] All references are to the Penal Code unless otherwise noted.

[2] Penal Code section 1026.5, subdivision (b)(1) states in pertinent part: "A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if such person has been committed under section 1026 for a felony . . . and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others."

term for the underlying offense. The other question raised was, in the light of no standard for sanity set forth in Penal Code section 1026a, what test should be applied to the applicant? It relied upon the test recited above from *Franklin, supra,* 7 Cal.3d 126. However, all of those cases are different than the one before us; they each, we repeat, had underlying offenses involving acts of violence. Therefore, the standard to determine sanity, literally applied was appropriate for the factual background to which it was applied. Here, we are dealing with a different kind of underlying crime, therefore the standard should be different.

Even though no standard to use as a test is provided for in section 1026.2, there is no reason that the standard should be that in section 1026.5, subdivision (b)(1) unless the classes of persons to which it applies are the same; or the purpose to be achieved is the same. Neither is the case.

All of the persons who are committed by virtue of section 1026 are in the same general class in that they are all insane. It does not follow that, even at the time of hospitalization, they all represent a substantial danger of *physical* harm to others or themselves. Whether they do represent a danger or not, depends on the nature of their mental disease, defect, or disorder and the underlying crime. Neither does it follow that all persons within the purview of section 1026 may become subject to the provisions of section 1026.5, subdivision (b)(1); only the violent offender may be subject to it. Certainly appellant here will not be within its classification. There is no requirement that there be a threat of physical harm to others for commitment under section 1026; and it should not be engrafted onto section 1026.2. Therefore, it is neither logical nor reasonable to make the standard of section 1026.5, subdivision (b)(1) applicable to section 1026.2.

There is no doubt that the evidence adduced at appellant's section 1026.2 trial clearly showed that he presented no danger of *physical* harm to anyone. Nor, apparently, had he presented any such danger at the time he committed the Penal Code section 476a offenses. However, the opinions of the psychiatrists who testified at appellant's trial were to the effect that he might reoffend and that he had not fully recovered his sanity. The court's determination that his sanity was not restored was reached by a broad application of the *In re Franklin, supra,* 7 Cal.3d 126, standard. A broad application of the rule is necessary to determine the question of whether or not there is a reasonable likelihood that the hospitalized person will recommit the offense that led to his hospitalization. If the answer is that the person will likely reoffend because of his illness, it means that his sanity has not been restored and that he should continue to receive appropriate treatment.

Statutes must be reasonably interpreted. It would be unreasonable to apply the section 1026.5 standard to a set of criminal facts such as confronted the trial court here for it would frustrate the application of section 1026.2 to such

facts. The Legislature would not have had such a purpose in mind when it set forth the *Moye, supra,* test in section 1026.5. Therefore, we conclude that the test of *In re Franklin* must be broadened to the extent we have indicated in order to serve a reasonable legislative purpose.

The judgment is affirmed.

Rouse, Acting P. J., and Smith, J., concurred.

A petition for a rehearing was denied February 18, 1983.