[Civ. No. 6688. Fifth Dist. Feb. 23, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS ALLESCH, Defendant and Appellant.

366

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Anna Jovanovich, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gregory W. Baugher and Jana L. Tuton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HAMLIN, J.—

### STATEMENT OF THE CASE

Defendant was found not guilty by reason of insanity of 21 second degree burglaries. Following defendant's commitment to the State Department of Mental Health, defendant filed a petition for a writ of habeas corpus. The county public defender was appointed to represent defendant, and a hearing was scheduled for July 15, 1982. Pending the hearing, defendant filed an application for release under Penal Code section 1026.2[1] upon the ground that his sanity had been restored, and in light of this application the petition for writ of habeas corpus was dismissed without prejudice pursuant to stipulation of counsel. In response to the application for release because of restoration to sanity, the court appointed two doctors to examine defendant. By August 2 both doctors' reports had been filed, and defendant requested a jury trial to determine the issue of his present sanity. Defendant's request for a third doctor's opinion was denied.

The jury returned a special verdict finding that, as related only to personal bodily injury, defendant was not at that time a danger to the health and safety of himself or others as a result of a mental disease, defect or disorder; however, the jury further found that, as related only to the loss of or damage to property, defendant was still a danger to the health and safety of himself or others as a result of a mental disease, defect or disorder. Based on that verdict the court entered a judgment recommitting defendant to the Department of Mental Health for placement in a state hospital. Defendant filed a timely notice of appeal from that judgment.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

STATEMENT OF THE FACTS

At the trial on the issue of defendant's present sanity, numerous witnesses testified both for defendant and for the People, as summarized below:

Defendant was raised in a small town in Pennsylvania with 13 brothers and sisters. Defendant's father had been a constable for 27 years and the police chief and sole law enforcement officer in the town for approximately 20 years. Defendant's father was an extremely brutal man who beat defendant's mother and all the children regularly and with great severity. His assaultive temperament was aggravated by excessive drinking, probably alcoholism. Defendant completed only the ninth grade in school, as he began working full time at that age to help support the family. Finally, at the age of 17, defendant intervened when his father was beating his mother, and defendant himself beat his father. He left home following that incident and never returned.

After leaving home but before he left Pennsylvania, defendant committed two burglaries for which he was apprehended. Both were apparently committed in order to obtain money on which to live. As a result of the two burglaries, defendant was sentenced to time on a work furlough, which he successfully completed.

Defendant then moved to California. Before the 21 burglaries with which defendant was charged but found not guilty by reason of insanity, defendant was arrested for a burglary in Hanford, California. As in Pennsylvania, defendant's performance while incarcerated was very good. Defendant was later arrested in Taft, California, for one of the burglaries underlying the charges on which he was originally committed to the State Department of Mental Health pursuant to section 1026. This arrest led to defendant's admission of 21 other burglaries. Based upon defendant's statements to them, the testimony of various mental health professionals at his trial suggests defendant may have "taken credit" for as many as 500 burglaries.

Most, if not all, of the burglaries which defendant committed were small scale. The premises burglarized by defendant were almost exclusively small businesses, with an occasional church or school being victimized. Defendant took only cash, ignoring pieces of movable equipment such as typewriters and cameras (although, according to defendant's testimony, he left these items because he didn't know where to "fence" them). The amounts defendant took in the burglaries were generally small, although defendant admitting taking between $1,800 and $2,000 in one burglary. The premises burglarized were always without a burglar alarm. The burglaries were com-

mitted at night when no one was on the premises. None of the burglaries involved a confrontation with proprietors or law enforcement officials.

Although defendant testified at trial that his motivation in committing the burglaries was purely and simply greed, the record demonstrates that defendant was always employed, occasionally working at two jobs, during the times he committed the Bakersfield/Taft burglaries. Other evidence revealed that the motivation behind the burglaries was more complex. Defendant testified that he would wake in the early morning hours, go out and commit several burglaries, and return home and fall back to sleep. Psychiatric interviews with defendant prior to the restoration of sanity proceedings consistently show defendant stating his unawareness of why he was committing the burglaries and his inability to refrain from that course of action.

Although varying in degree of severity, defendant was diagnosed as suffering from "atypical mixed or other personality disorder and atypical impulse control disorder." This was the diagnosis of the court-appointed doctor in the restoration of sanity proceedings. This same doctor had examined defendant at defendant's request in connection with the underlying charges. It was this doctor's original diagnosis of kleptomania, general anxiety disorder and mixed personality disorder which formed the basis for defendant's plea of not guilty by reason of insanity.

In general, those mental health professionals who testified on defendant's behalf testified that defendant's condition had improved during the most recent period of confinement, i.e., that period following his acquittal by reason of insanity of the 21 burglaries charged. All of defendant's witnesses testified to his nonviolent nature and their lack of knowledge of any known acts or reputation for violent conduct.

The People's witnesses, while agreeing that defendant was not a violent personality, disagreed with the assessment of defendant's improvement. The People's professional witnesses had had more frequent therapeutic contact with defendant than had the witnesses who testified on defendant's behalf. More significantly, however, the People's witnesses testified that, not only had defendant failed to make significant improvement with respect to his impulsive/compulsive behavior, but he also possessed highly developed manipulative skills, which are frequently symptomatic of the "con artist" element of a personality disorder. Both psychiatric social workers at Atascadero State Hospital, who had had experience with defendant, found him to be manipulative and relatively unwilling to deal with the roots of his problem. Both found defendant lacking in insight and further lacking in remorse and concern for the victims of his acts.

All the People's witnesses agreed that defendant was very likely to commit more burglaries if released, as he had failed, in the opinion of those witnesses, to correct the underlying cause of the behavior. The court-appointed doctor who had examined defendant in both the original criminal proceeding and the proceedings on restoration to sanity stated that he was 98 percent certain defendant would commit additional burglaries if released. Both court-appointed doctors agreed that the treatment of personality disorders is extremely difficult since it depends upon individual willingness to participate in a lengthy therapeutic process. However, neither of them stated an opinion that personality disorders were "impossible" to treat.

## DISCUSSION

*Defendant's application for release because of restoration to sanity was properly denied on the basis that he remained a danger to the property of others.*

■ Initially, we must consider whether defendant's release from the State Department of Mental Health during the pendency of this appeal has rendered the appeal moot. By the express terms of section 1026.2, a person who has unsuccessfully petitioned for release under that statute may file another petition for release after one year has elapsed. Defendant did so; therefore, while defendant's appeal from the denial of his first petition was pending before this court, defendant's second petition for release came on regularly for trial, and this second petition was granted upon a finding that defendant had been restored to sanity. Shortly before defendant's appeal was orally argued, defendant himself was released from confinement.

Nonetheless, we believe that well-established principles warrant our decision in the instant case. " '[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.' [Citations omitted.]" (*Gordon* v. *Justice Court* (1974) 12 Cal.3d 323, 326, fn. 1 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551].) Given the annual petition process available under section 1026.2, it is clear that the denial of an earlier petition could consistently escape appellate review when a subsequent petition succeeds in securing the release of a defendant confined to the State Department of Mental Health. Because the instant appeal involves novel questions about the nature and degree of mental disease or defect necessary to warrant continued confinement, i.e., to sustain denial of a petition for release under section 1026.2 on the basis of restoration to sanity, our determination of these issues is justified, notwithstanding defendant's intervening release based on a subsequent petition.

■ Defendant's sole contention on appeal was that his application for release pursuant to section 1026.2 could not properly be denied on the basis that he remained a danger to the *property* of others. Defendant correctly points out that no language in section 1026.2 refers to a continuing danger to the property of others. However, it is also true there is no express language in the statute concerning danger at all. The statute refers to a release upon the *restoration to sanity.* The standard under which restoration to sanity is to be decided in section 1026.2 proceedings is judicially created and was first articulated by our Supreme Court in *In re Franklin* (1972) 7 Cal.3d 126 [101 Cal.Rptr. 553, 496 P.2d 465]. There the court stated: "Both petitioner and the People join in the proposition that the relevant standard under section 1026a is not whether the person committed is no longer legally insane, but whether he has improved to the extent that he is no longer a danger to the health and safety of others, including himself. (*In re Jones,* 260 Cal.App.2d 906, 911-912 . . .; see *In re Slayback* [1930] 209 Cal. 480, 490 ['no longer a menace to the public nor dangerous to themselves']; *People* v. *Mallory,* 254 Cal.App.2d 151, 155-156 . . . [rejecting M'Naughton test as appropriate for determining restoration of sanity]; Welf. & Inst. Code, § 7375, subd. (b) [standard for parole of persons committed under Pen. Code, § 1026]; Berg, *Release of Criminal Defendants Acquitted Because of Insanity,* 46 L.A. Bar Bull. 21, 40-41; Model Penal Code, *supra,* § 408, comment [Tent. Draft No. 4], pp. 199-200; Hamann, [*The Confinement and Release of Persons Acquitted by Reason of Insanity*], 4 Harv.J.Legis. 55, 81-88.) We adopt the foregoing standard as applicable to proceedings under section 1026a." (*In re Franklin, supra,* 7 Cal.3d at p. 145; see also *In re Moye* (1978) 22 Cal.3d 457, 462 [149 Cal.Rptr. 491, 89 P.2d 234].)

Defendant argues that the foregoing standard applicable to section 1026.2 (formerly § 1026a) proceedings requires only a showing that the defendant no longer poses a danger of causing physical harm to the person of another. Defendant's argument ignores the meaning of the words used. In Webster's New World Dictionary (2d college ed.) "health" is defined as "physical and mental well-being, freedom from disease, pain, or defect; normality of physical and mental functions; soundness . . . ." (*Id.,* at p. 645.) On the other hand, "safety" is defined to include, "the quality or condition of being safe; freedom from danger, injury or damage; security . . . ." (*Id.,* at p. 1253.) The distinction in the two words is apparent. Health encompasses those attributes of physical well-being normally associated with the human body, while the definition of safety encompasses broader aspects of the human condition. We believe safety, by definition and by common sense, is not limited to safety from physical harm; safety implies freedom from damage to one's property; it implies a right to be secure in one's person and in one's possessions.

More importantly it seems clear that the Legislature can address itself to the narrow issue of physical well-being if it wishes to do so. For example, the provisions of section 1026.5, subdivision (b)(1), specifically address those persons "who by reason of a mental disease, defect, or disorder [represent] a substantial danger of physical harm to others." (See also Welf. & Inst. Code, §§ 5300-5304.) Defendant relies on these sections to aid in the interpretation of section 1026.2. His reliance is misplaced.

The Legislature had a good reason to impose a higher standard on the People when they seek to extend the commitment to the Department of Mental Health beyond the maximum term for which an individual could have been committed to prison in the absence of a successful plea of not guilty by reason of insanity. Moreover, by the terms of section 1026.5, subdivision (b)(1), its provisions are applicable only to persons who commit certain enumerated felonies, such as murder, mayhem, kidnaping with great bodily injury, robbery involving use of a deadly weapon or infliction of great bodily injury, first degree burglary, and various sex offenses. Those enumerated felonies are inherently or expressly dangerous to human life, and the persons who commit them and are later found not guilty by reason of insanity have a manifested mental defect rendering them a danger to the physical well-being of other people.

In interpreting section 1026.2 we are mindful that the plea of not guilty by reason of insanity is not itself limited to the felonies enumerated in section 1026.5, subdivision (b)(1). It is equally available to persons, such as defendant, who have committed nonviolent property-related offenses. The Legislature expressly limited extended commitments pursuant to section 1026.5 to those persons who continue to represent a substantial danger of physical harm to others. Had the Legislature intended a similar limitation to apply to applications for release pursuant to section 1026.2, they could have included similar language. The Legislature did not, and there appears to be no reason for engrafting this limitation onto the judicially enunciated standard that the defendant establish he is no longer a danger to the health *and* safety of others.

Having framed the standard a defendant must satisfy in order to terminate his commitment to the Department of Mental Health, the court in *Franklin* went on to allocate the burden of proof to the defendant. The court pointed out that the prior judicial determination of insanity places the defendant in a special class. In that circumstance it is reasonable to require the defendant to prove that his sanity has been restored at the time of the hearing. (*In re Franklin, supra,* 7 Cal.3d at pp. 145-147.)

In the instant case defendant has proven his dangerousness to the safety of other people by securing his acquittal by reason of insanity of 21 second

degree burglaries. The evidence at the section 1026.2 hearing suggests that defendant may have committed as many as 500 similar burglaries. Thus the public has a special interest in defendant's confinement until such time as the particular danger he poses has been ameliorated.

By pleading and proving his right to acquittal by reason of insanity, defendant himself has invoked the *entire* body of applicable law, including those provisions addressing restoration to sanity. Defendant may not claim only those provisions which benefit him and reject those related provisions enacted for the benefit of the society as a whole; to the extent legally permissible, society is entitled to attempt to insure that defendant is not likely to recommit the same offense which posed the original danger to society.

Defendant's contention that the trial court erred in instructing the jury that the danger contemplated by judicial construction of section 1026.2 could encompass the risk of loss or damage to property of others is simply a variation of defendant's basic argument. Without the special verdict form to this effect and the instructions of which defendant complains, the jury could not have known of the standard we conclude to have been appropriate. The text of both the special jury instructions requested by the People and by defendant as well as the special verdict forms are set forth below at footnote 2.[2] The instructions are preceded by the approved text of CALJIC

---

[2]The instructions given by the trial court:

"[CALJIC No. 4.15:] Defendant was previously found not guilty of a criminal offense by reason of insanity. It is now your function to determine whether or not defendant's sanity has been restored.

"A person's sanity is restored when he is not a danger to the health and safety of himself or others. The burden is on the defendant to prove by a preponderance of the evidence that he is not a danger to the health and safety of himself or others.

"By a preponderance of the evidence is meant such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth. In the event that the evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, then your finding upon that issue must be against the party who had the burden of proving it.

"In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it.

"[People's special instruction No. 2:] Petitioner has the burden of proving, by a preponderance of the evidence, that he is no longer subject to the mental abnormality which produced his criminal act.

"[Defendant's special instruction No. 2:] A person is dangerous when he is likely to cause injury or pain. [People's special instruction No. 3:] Danger is not limited to a risk of bodily injury or physical violence. The term 'danger to the health and safety of others or oneself' may include the risk of loss of or damage to property."

From the jury verdict form, issue I: "We, the jury empaneled to try the above-entitled matter, find that, as it relates only to personal bodily injury, the defendant, Thomas Allesch, is no longer a danger to the health and safety of himself or others as a result of a mental disease defect or disorder."

From the jury verdict form, issue II: "We the jury empaneled to try the above-entitled matter hereby find that, as it relates only to the loss of or damage to property, the defendant,

No. 4.15 to reflect the actual instruction in its entirety as read to the jurors in the instant case. Additionally, although both instructions and special verdicts were given in the alternative, only those verdicts found by the jury to be true are included in the footnote.

If our articulation of the appropriate standard to be applied in section 1026.2 proceedings is correct, it follows that the trial court did not err in instructing the jury that it could return a verdict against defendant if it found that he still represented a danger to the property of others. The special verdict forms were required to explain the jury's verdict. The trial court's actions are consistent with the use note and comment provided to CALJIC No. 4.15:

### "USE NOTE

"This definition of restoration of sanity is not the same definition to be used in proceedings to extend commitment under Penal Code, § 1026.5, added by Stats. 1979 and effective October 2, 1979 as emergency legislation.

### "COMMENT

"In restoration of sanity proceedings, burden of proof is on petitioner to prove by a preponderance of the evidence that he is not a danger to the health and safety of others, including himself. A three-fourths verdict is required. In re Franklin, 7 Cal.3d 126, 101 Cal.Rptr. 553, 496 P.2d 465.

"In proceedings to extend commitment, it must be found that the defendant, by reason of a mental disease, defect or disorder, represents a substantial danger of physical harm to others. Stats. 1979, Penal Code, § 1026.5, effective October 2, 1979.

"It is the opinion of the CALJIC Committee that Welfare and Institutions Code, § 5304, definition of danger to others was not intended by the Legislature to apply to 1026.2 restoration of sanity proceedings."

■ We specifically reject defendant's argument that the trial court erred in reading to the jury People's special instruction No. 2. That instruction imposed upon defendant the burden of proving by a preponderance of the evidence that he was no longer subject to the mental abnormality which produced his criminal act—i.e., that defendant was no longer subject to the

---

Thomas Allesch, remains a danger to the health and safety of himself or others as a result of a mental disease, defect or disorder."

personality disorder with its elements of antisocial, impulsive and compulsive behavior which initially caused him to commit the burglaries with which he was charged. The express language of that instruction is not inconsistent with the *Franklin* standard insofar as the mental abnormality which produced defendant's criminal act continues to render him a danger to the health and safety of others. Not only did the trial court read CALJIC No. 4.15 before special instruction No. 2, but it later gave People's special instruction No. 3. This latter instruction deals specifically with risk of loss or damage to property, and it properly focused the attention of the jury on the correct standard and minimized the chance that the jury would interpret instruction No. 2 in any inconsistent manner.

In response to questions by this court, defendant filed a second supplemental brief. In that brief he argues that (1) the specific statutory language of section 1026.2 requires that defendant show his *sanity has been restored* and (2) this can be assessed more precisely by application of the American Law Institute (ALI) standard of insanity adopted and found applicable in California by *People* v. *Drew* (1978) 22 Cal.3d 333, 348 [149 Cal.Rptr. 275, 583 P.2d 1318]. Defendant takes this position after reviewing many authorities which confirm the difficulty of predicting future "dangerous" behavior. While we do not disagree that such a prediction is difficult, we again point out that criminal defendants who have been found not guilty by reason of insanity have already established their danger to society in committing acts which would otherwise be adjudged criminal.

■ Even if we adopt defendant's argument, i.e., in section 1026.2 proceedings we should again apply the ALI standard to assess defendant's claim of restoration to sanity, it would not benefit defendant. The ALI standard provides that a defendant is legally insane if, as a result of mental disease or defect, he is unable to conform his conduct to the requirements of law. At trial, substantial evidence in the form of psychiatric testimony was produced to establish that defendant still suffered from the antisocial, compulsive and impulsive personality disorder which caused him to commit numerous second degree burglaries. This was the same personality disorder which supported the acquittal by reason of insanity. Thus substantial evidence established that, as a result of mental disease or defect, defendant remained unable at the time of the hearing to conform his conduct to the requirements of law and therefore, under the ALI standard, remained criminally insane.

■ Additionally, we reject defendant's contention that his personality disorder constitutes a type of mental defect which is insufficient as a matter of law to warrant continued commitment. Admittedly, personality disorders can be of numerous degrees and kinds, some of which lead to criminal

activity and the majority of which do not. Defendant's mental defect is the kind that may result in criminal activity.

The evidence also establishes that personality disorders are very difficult to treat, although not impossible. Effective treatment depends upon the co-operation of the individual, which may be frustrated by the characteristics of the personality disorder itself. An example from defendant's case is il-lustrative. Accepting that therapeutic work on a personality disorder is lengthy and time-consuming, testimony was introduced that defendant, as is symptomatic of personality disorders of this type, required immediate gratification and became bored with any process not producing such im-mediate results. The attendant difficulties in the therapeutic process are ev-ident. Defendant might be able to identify and target those facets of his personality which are part of the diagnosed disorder but lack the willing-ness to persevere in the therapeutic process until progress is made. While this is clearly a difficulty, it does not render therapy impossible.

A contrary conclusion leads to results that we believe the Legislature could not have intended in specifying the release procedures inherent in section 1026.2. The result we refer to is: Defendant is properly found not guilty by reason of insanity of 21 second degree burglaries because his particular personality disorder, encompassing antisocial, compulsive and impulsive aspects, renders him incapable of controlling his actions. None-theless, because defendant's mental abnormality is a personality disorder as opposed to a psychosis or neurosis, defendant would be eligible for virtually immediate release with no attempt to cure the underlying disorder.

Our decision in this case is consistent with the result reached in *People v. Woodson* (1983) 140 Cal.App.3d 1 [189 Cal.Rptr. 199]. We note, how-ever, that we believe that court unnecessarily distinguished *In re Franklin, supra,* 7 Cal.3d 126 on the basis that *Franklin* involved a crime of violence. The underlying crime in *Franklin* was a false bomb report. We do not consider that such an offense is the equivalent of the violent crimes enum-erated in section 1026.5. Nonetheless, we agree with the *Woodson* court that there is a distinction between section 1026.5 proceedings, with the legislative requirement that danger of physical harm to others be proven, from the broader terminology of section 1026.2 and the applicable standard approved by the *Franklin* court. *Franklin* can in no event be read to construe the standard to be used in section 1026.2 proceedings as identical to that in proceedings under section 1026.5, subdivision (b)(1). Therefore, we con-clude, in applying the standard established in *Franklin* to the facts of this case, there could be no finding that defendant had improved to the extent that he was no longer a danger to the health and safety of others, including himself.

The judgment is affirmed.

Hanson (P. D.), Acting P. J., and Andreen, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1984. Bird, C. J., and Reynoso, J., were of the opinion that the petition should be granted.