[No. D005564. Fourth Dist., Div. One. Feb. 26, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICE WILLIAMS, Defendant and Appellant.

## COUNSEL

Jeffrey E. Estes for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Peter Quon, Jr., Pat Zaharopoulos and Holly D. Wilkiens, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, Acting P. J.**—Charged with bank robbery by force or fear (Pen. Code,[1] § 211), Maurice Williams was found not guilty by reason of insanity and committed to Patton State Hospital under section 1026. In July 1985, Williams was placed on "hospital parole." (§ 1611 (since repealed).) Six months later he was placed on outpatient status under section 1026.2, retroactive to July 1985.

In March 1986, Williams applied for release from commitment on the ground his sanity had been restored. (§ 1026.2, subd. (e)[2].) After trial, the jury found Williams's sanity had not been restored. Williams appeals, claiming the jury's finding was based on an erroneous instruction. We agree and reverse for a new sanity hearing.

---

[1] All statutory references are to the Penal Code.

[2] Section 1026.2, subdivision (e) provides: "The court shall hold a hearing to determine if the person applying for restoration of sanity would no longer be a danger to the health and safety of others, including himself or herself, if under supervision and treatment in the community. If the court at the hearing determines the applicant will not be a danger to the health and safety of others, including himself or herself, while under supervision and treatment in the community, the court shall order the applicant placed with an appropriate local mental health program for one year. All or a substantial portion of the program shall include outpatient supervision and treatment. The court shall retain jurisdiction. The court at the end of the one year, shall have a trial to determine if sanity has been restored, which means the applicant is no longer a danger to the health and safety of others, including himself or herself. The court shall not determine whether the applicant has been restored to sanity until the applicant has completed the one year in the appropriate local mental health program. The court shall notify the persons required to be notified in subdivision (a) of the hearing date."

## Procedural Background

Over Williams's objection the court instructed the jury according to *Cramer* v. *Tyars* (1979) 23 Cal.3d 131 [151 Cal.Rptr. 653, 588 P.2d 793] and *People* v. *De Anda* (1980) 114 Cal.App.3d 480 [170 Cal.Rptr. 830] as follows: "In making the determination as to whether or not the defendant's sanity is restored, you must disregard what effect any medication prescribed for the defendant's mental condition might have on his behavior.

"Your decision should focus only on whether or not the defendant, in an unmedicated condition, by reason of some mental disease, defect or disorder, represents a danger to the health and safety of himself or others."

The court rejected Williams's proposed jury instruction: "In determining whether or not the Defendant's sanity has been restored, the sole question you are here to decide, is whether or not the defendant, in his present medicated condition represents a danger to himself or others.

"And, in order to have the Defendant's sanity legally restored, while in a medicated state, you must also find, by a preponderance of the evidence, that the Defendant will continue to take his medication as prescribed, in an unsupervised environment.

"If you find that [the] Defendant is no longer a danger to himself or others while in a medicated condition, and that he will continue to take his medication, than [*sic*] you may find that Defendant's sanity is legally restored."

## Discussion

" ' The purpose of involuntary hospitalization for treatment purposes is *treatment* and not mere custodial care or punishment." ' " (*In re Ingram* (1978) 76 Cal.App.3d 495, 500 [142 Cal.Rptr. 825], quoting *People* v. *Feagley* (1975) 14 Cal.3d 338, 359 [121 Cal.Rptr. 509, 535 P.2d 373].) When patients are so committed for treatment purposes they unquestionably have a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. *(Ibid.)*

The Legislature has delineated the commitment process after acquittal by reason of insanity in section 1026, and the procedure out of

commitment and supervision into the community in section 1026.2.[3] Initially after acquittal of a criminal offense by reason of insanity, the court must determine if the defendant has fully recovered his sanity.[4] If the defendant has not fully recovered, he is then hospitalized and ". . . shall not be released from confinement, parole, or outpatient status unless and until the court which committed the person shall . . . find and determine that the person's sanity has been restored." (§ 1026 subd. (b).) ██ A defendant is committed for institutional evaluation if there is *any* evidence the defendant is still suffering from a mental illness. (*People* v. *De Anda, supra,* 114 Cal.App.3d 480, 489.)

██ Once confined, the defendant faces a different set of standards for release. After 180 days of confinement the defendant may apply for a hearing to show he or she is no longer a danger to the health and safety of others, including himself or herself, while in treatment in the community. If successful, the defendant is placed in a local mental health program consisting of outpatient supervision and treatment. After one year, a trial is mandated to determine if sanity has been restored, ". . . which means the applicant is no longer a danger to the health and safety of others, including himself or herself." (§ 1026.2, subd. (e).)

Thus three distinct standards apply in the commitment and release of a person acquitted by reason of insanity. The person is committed if "any mental illness is present," then placed in a local mental health program "if no longer dangerous while in treatment," and finally restored to sanity "if no longer dangerous." ██ The no longer dangerous standard under section 1026.2 is far less stringent than full restoration of sanity under section 1026. In order to be restored to sanity, the defendant need not show he is no longer legally insane (*People* v. *Blackwell* (1981) 117 Cal.App.3d 372, 376-377 [172 Cal.Rptr. 636]). He need show only he is not likely to cause injury or pain or expose himself or others to injury. (*Id.* at p. 378.)

██ Here, the uncontradicted evidence establishes Williams was 36 years old at the time of trial, lived independently in a studio apartment, and

---

[3] Sections 1026 and 1026, subdivision (a) were reorganized by the Legislature effective September 28, 1979. The former section 1026, subdivision (a), the procedure for release of a person already committed under former section 1026, was renumbered as section 1026.2. Former section 1026, the commitment procedure for persons acquitted by reason of insanity, was renumbered section 1026, subdivision (a). For a complete discussion, see *People* v. *Froom* (1980) 108 Cal.App.3d 820, 830-831 [166 Cal.Rptr. 786].

[4] Section 1026, subdivision (a) provides in part: "If the verdict or finding be that the defendant was insane at the time the offense was committed, the court, unless it shall appear to the court that the sanity of the defendant has been recovered fully, shall direct that the defendant be confined in a state hospital for the care and treatment of the mentally disordered . . . ."

attended San Diego City College. Two psychiatrists, Drs. Walt R. Griswold, Henry Amado, and one psychologist, Dr. Edward Calis, testified Williams is a chronic paranoid schizophrenic in remission. Remission was defined as "reverted to being sane, . . . presumed to be able to resume his place in society." All experts agreed Williams's illness is well controlled with antipsychotic medication, without the medication Williams's remission would cease and he would slide into psychotic behavior.

Williams's psychiatrist, counselor and psychologist all agreed Williams takes his medication without supervision. The court-appointed psychiatrist and Williams's treating psychiatrist both recommended Williams be restored to sanity. However, Dr. Calix, Williams's county-assigned psychologist opposed restoration to sanity based solely on his belief Williams would discontinue his medication because he "begrudgingly" participated in the county mental health program. No evidence of dangerousness was presented other than the 1982 weaponless $500 robbery in which Williams falsely gave the bank teller a note stating he had a gun and one mention of suicide in 1980. All the expert witnesses agreed Williams is not dangerous to others or himself while medicated, and that by the nature of his illness he must take medication to remain in remission. To require Williams to prove he is not dangerous without medication is to ask him to return to a chronic state, precisely the condition which resulted in his commitment.

The court relied upon *People* v. *De Anda, supra,* 114 Cal.App.3d 480 and *Cramer* v. *Tyars, supra,* 23 Cal.3d 131 for the "not dangerous while unmedicated" jury instruction. As we will explain, *Tyars* correctly applied supports Williams's contention, while *De Anda* is inapposite because it concerns the commitment standard under section 1026 rather than restoration of sanity under section 1026. " 'In determining whether Luther Tyars is a danger to himself or others you may take into account improvement due to medication if it is likely that in the foreseeable future Luther Tyars would be provided with and take needed medication.' " (*Cramer* v. *Tyars, supra,* 23 Cal.3d at p. 142.) There the jury instruction was properly refused precisely because it "exceeded review of appellant's current mental condition and potential for dangerous behavior and invited consideration of possible future behavior under hypothetical conditions." (*Id.* at p. 142.) The instruction in *Tyars* was properly refused precisely because it invited speculation. An individual's present condition is the focus of a commitment proceeding, not his or her behavior under future changes. Tyars posited he would be properly medicated at a future date to control his present assaultive behavior and should not presently be committed. However, here, Williams's requested instruction did not invite speculation. The instruction was framed to reflect his previous conduct while on medication allowing the jury to decide the threshold question whether Williams would continue to take his

prescribed medication in an unsupervised environment and if so, whether in his medicated condition he represented a danger to himself or others. Unlike the facts in *Tyars* the instruction which the court here failed to give did not invite speculation.

In *De Anda, supra,* 114 Cal.App.3d 480, the defendant had been acquitted by reason of insanity for stabbing his sleeping wife in the head and stomach with a kitchen knife. He was diagnosed a paranoid schizophrenic. De Anda sought to avoid commitment altogether at his initial sanity hearing on the claim he had fully recovered. He was taking anti-psychotic drugs and was in therapy at the time of the sanity hearing. The court relied upon *People* v. *Froom, supra,* 108 Cal.App.3d 820, 831, for the purpose of a section 1026 commitment: ". . . to protect the defendant and the public during the period necessary to appraise the defendant's present sanity." De Anda was committed because "psychopharmeceutical restoration of sanity should not be considered a 'full' recovery within the meaning of section 1026, subdivision (a) and under such circumstances an institutional examination is necessary to truly evaluate the dangers posted by a defendant." (*De Anda, supra,* at p. 490.)

Williams, in contrast, has already been committed, evaluated, and released as an outpatient for over a year. The "full recovery" standard has already been applied to Williams. He must now meet only the lesser "nondangerous" standard. If we were to approve of what the court did here we would be participating in a human tragedy. In effect we would be urging Williams to discontinue his essential medication in order to have his legal sanity restored. We would also be denying liberty to an individual fully capable of functioning freely in society subject to his taking prescription medication. We see no reason why the judicial resolution to the issue before us should be contrary to our notion of a democratic society and counterproductive to the medical recommendations made in the best interests of Williams's mental health. As Dr. Griswold testified, a great many people afflicted with schizophrenia function in society with the aid of medication.

Approval of the jury instructions given in this case could arguably result in individuals suffering from schizophrenia, such as Williams, languishing indefinitely in mental hospitals or as outpatients because of their reluctance to rely on prescription medication, an impediment to their complete freedom. Instead of being encouraged to take medication, indisputably vital to their well-being, Williams and others similarly situated would be subtly invited to gamble without taking such medication in order to have their sanity restored. In both personal and societal terms it is senseless to deny persons fully functional on medication their rightful place in the community of their choice. Further, since the purpose of commitment is treatment, including medication, there is no legal reason why an individual's treatment

must cease as a prerequisite to restoration of sanity. Dr. Amado poignantly testified "he is in remission, and I've been impressed with the extent of his compliance. . . . [H]e's continued to have an excellent record, so that . . . from my vantage point, I would ask myself what else we need to ask of Mr. Williams."

On the facts of this case the court's failure to give the requested instructions was prejudicial error.

We are sensitive to the fact that substantial evidence was presented that Williams fully complied with the conditions of his hospital parole, and is not dangerous to himself and others while medicated. Nonetheless we believe that in light of the contrary testimony from the county psychologist and the substantial period of time that has elapsed since the trial of this case, that we should reverse for retrial on the restoration of sanity issue in accordance with this opinion.

## DISPOSITION

The judgment denying Williams's restoration to sanity is reversed.

Work, J., concurred.

**THAXTON, J.,**\* Dissenting.—The test for determining if sanity has been restored under Penal Code[1] section 1026.2 is whether the applicant has improved to the extent he or she is no longer a danger to the health and safety of others, including himself or herself. (*People* v. *Allesch* (1984) 152 Cal.App.3d 365, 372 [199 Cal.Rptr. 314].) The applicant has the burden of proving by a preponderance of the evidence he or she is no longer a danger. (*In re Franklin* (1972) 7 Cal.3d 126, 147 [101 Cal.Rptr. 553, 496 P.2d 465].)

The psychological experts who testified at Williams's restoration of sanity trial agreed Williams's schizophrenia was in remission due to the antipsychotic medication he was taking. According to Dr. Edward Calix, who for four weeks was Williams's psychologist at the conditional release program, if Williams ceased to take antipsychotic medication he could very well become suicidal. Dr. Calix referred to an episode in 1980 when Williams reported to Center City Hospital because of suicidal ideation.

Dr. Calix also testified that Williams's participation in the program had been rather begrudging, and that he manifested very limited insight into the

---

\*Assigned by the Chairperson of the Judicial Council.
[1] All statutory references are to the Penal Code unless otherwise specified.

necessity for him to maintain on antipsychotic medications. The two experts who recommended Williams's sanity be restored conditioned their recommendation on Williams continuing to take his medication. Both experts testified they would change their recommendations if Williams were to stop taking his medication.[2] Based on this evidence and on the holdings in *People* v. *De Anda* (1980) 114 Cal.App.3d 480 [170 Cal.Rptr. 830] and *Cramer* v. *Tyars* (1979) 23 Cal.3d 131 [151 Cal.Rptr. 653, 588 P.2d 793], the court instructed the jury to disregard the effects of medication in deciding whether Williams was no longer a danger to himself or others.

In *People* v. *De Anda, supra,* 114 Cal.App.3d 480, the defendant was acquitted by reason of insanity of assault with a deadly weapon. The court ordered him committed to the state hospital under section 1026, having found the defendant had not fully recovered his sanity. *(Id.* at p. 488.) The court based its finding on numerous psychiatric reports and testimony. According to this evidence, the defendant still needed antipsychotic medicine and therapy without which there was a possibility he could become dangerous. *(Id.* at pp. 485-487.)

On appeal, the court affirmed, stating the evidence supported the trial court's finding that without antipsychotic medication and therapy, there was a possibility the defendant would become dangerous and thus, he had not " 'fully recovered his sanity.' " *(Id.* at p. 490.) "Since the purpose of a commitment under section 1026 is 'to protect the defendant and the public during the period necessary to appraise the defendant's present sanity' [citation] psychopharmaceutical restoration of sanity should not be considered a 'full' recovery within the meaning of section 1026, subdivision (a) . . . ." *(Ibid.)*

The majority attempts to distinguish *De Anda* on the ground the standard for release under section 1026 requires full restoration to sanity while release under section 1026.2 only requires a showing the defendant is no longer a danger. However, the basis for disregarding the effect of medication on a person's sanity under section 1026 is the same as that under section 1026.2—to ensure the safety of the public and the defendant when the defendant is released. *(Id.* at p. 490; *Barnes* v. *Superior Court,* (1986) 186 Cal.App.3d 969, 975 [231 Cal.Rptr. 158].) Under both sections, the trier of fact must determine the defendant's suitability for unconditional release.

In *Cramer* v. *Tyars, supra,* 23 Cal.3d 131, the Supreme Court addressed a similar issue under Welfare and Institutions Code sections 6500-6512 gov-

---

[2] One of Williams's experts testified that if Williams stopped taking his medication, he could be expected to relapse into a violent pattern, meaning there would be a greater potential for suicidal tendencies. The expert also testified if Williams stopped taking his medication, he would eventually become a danger to himself and others.

erning civil commitment of mentally retarded persons. A jury found Luther Tyars was a mentally retarded person who constituted a danger to himself or others. *(Id.* at pp. 136-137.) The court committed Tyars to the Department of Health for placement in a state hospital. *(Ibid.)*

On appeal, Tyars challenged the court's failure to instruct the jury as follows: 'In determining whether Luther Tyars is a danger to himself or others you may take into account improvement due to medication if it is likely that in the foreseeable future Luther Tyars would be provided with and take needed medication.' " *(Id.* at p. 142.) The court held such an instruction was properly refused, reasoning: "In seeking such an instruction, appellant's counsel exceeded review of appellant's current mental condition and potential for dangerous behavior and invited consideration of possible future behavior under hypothetical conditions. The pertinent issue under section 6507 is the present 'condition or status' of the alleged mentally retarded person. The Legislature has not elected to authorize consideration of the factors of medication, or future changes in the patient's condition." *(Ibid.)*

Here, as in *Tyars,* the issue before the jury was whether the individual was presently a danger to himself or others or had the potential to become dangerous. As in *Tyars,* the jury heard evidence on the individual's current mental condition and potential for dangerous behavior. Neither section 1026.2 nor Welfare and Institutions Code section 6507 authorizes the trier of fact to consider the effect of medication when assessing dangerousness. Thus, the court properly relied on the holding of *Tyars* in instructing the jury on the analogous issue under section 1026.2.

The majority contends that unlike the instruction rejected in *Tyars,* Williams's requested instruction did not invite speculation. However, the instruction requested by Williams invited the jury to speculate as to whether Williams would continue to take his medication as prescribed in an unsupervised environment.

Williams's proposed instruction was also internally inconsistent in that it stated the sole question the jury was to decide was whether Williams in his present medicated condition presented a danger to himself or others.

The statutory provisions on commitment of persons found not guilty by reason of insanity represent a delicate balance between society's right to be protected from potentially mentally ill and dangerous persons on the one hand and the individual's improvident confinement on the other hand. *(Barnes* v. *Superior Court, supra,* 186 Cal.App.3d at p. 975.) Williams has already been judicially determined to have endangered both the public

safety and his own as a result of his mental condition. However, Williams is not confined. He lives independently in the community on an outpatient basis, enjoying as much freedom as is prudent consistent with reasonable protection of himself and the public.

When the sanity of an individual is conditioned on continuation of medication, an unconditional release pursuant to section 1026.2 places the maintenance of sanity solely in the hands of the individual being released. Such a result is clearly not contemplated by section 1026.2 and would not adequately insure the safety of the individual or the public.

I would affirm the judgment.

Respondent's petition for review by the Supreme Court was denied June 23, 1988.