[Crim. No. 3398. Fifth Dist. Jan. 3, 1978.]

In re ALAN G. INGRAM on Habeas Corpus.

**COUNSEL**

David H. Fielding, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Paul H. Dobson and Robert F. Tyler, Deputy Attorneys General, for Respondent.

OPINION

GARGANO, J.—In 5 Criminal No. 2854 petitioner herein purported to appeal from an order of the Superior Court of Kings County denying petitioner's application for a writ of habeas corpus, a nonappealable order. (*In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1].) Thereafter, we ordered the appeal dismissed, but, because the transcript of the evidentiary hearing held in the superior court and petitioner's opening brief clearly delineate the relief requested, in the interests of justice, we ordered the clerk of this court to refile all of the papers and records in 5 Criminal No. 2854 under a separate number as an original proceeding for habeas corpus relief filed in this court.

On May 15, 1974, petitioner, who was charged in the Superior Court of Kings County (action No. 5109) with an assault with a deadly weapon, entered a plea of not guilty to the charge by reason of insanity. Thereafter, petitioner waived a jury trial on that issue, and the court found that petitioner was insane at the time of the commission of the offense, that he had not fully recovered his sanity and that he was a menace to the health and safety of others. On May 21, 1974, the court ordered petitioner to be committed to the Department of Mental Hygiene for placement at the Atascadero State Hospital. (See Pen. Code, § 1026.)

About three days later, petitioner arrived at the Atascadero facility and was diagnosed as having a severe schizophrenic paranoid psychosis involving an extreme persecution complex. He was suspicious of everyone; he was belligerent and argumentative; and he had little care or concern about others. Petitioner was placed in an achievement rehabilitation program that included industrial therapy, group therapy and the use of medication to control behavior patterns. By August 1975 petitioner began to show signs of marked improvement. As a consequence he was taken off of medication.

In November 1975 petitioner stopped cooperating with the hospital staff. Petitioner had not been transferred to another program as a staff member had promised earlier, and his suspicions, belligerence and argumentative behavior increased. He began to show less concern and care for others, and all of his behavior patterns began to regress. However, petitioner was not placed back on medication, nor was his therapy program changed.

On February 17, 1976, petitioner filed an application for a writ of habeas corpus in the Superior Court of Kings County (action No. 5428) alleging that his confinement in Atascadero State Hospital was illegal since (1) there had been a "remission of [his] insanity," (2) he had "reached maximum benefit from therapy," and (3) there had been a "denial of [his] rights." By court order, petitioner was removed from the Atascadero State Hospital and remanded to the custody of the Kings County Superior Court for further proceedings.

On April 21, 1976, the superior court appointed Attorney Jan Kahn to represent petitioner in the habeas corpus proceedings. The court also appointed Doctors Charles Davis and George Papadopoulos to examine petitioner in connection with his allegation that he had regained his sanity; thereafter, petitioner was examined by both doctors.

On May 10, 1976, petitioner asked the superior court to remove Jan Kahn as his counsel of record and to appoint another lawyer. The motion was grounded upon petitioner's belief that he could do better with another attorney. The motion was denied. Later, on May 27, 1976, petitioner moved to have another lawyer appointed to assist his attorney in the presentation of his case; on this occasion petitioner twice stated that he did not want Mr. Kahn dismissed from the case. The court denied the motion, but the judge explained that a second attorney would be appointed to assist Mr. Kahn if counsel made an appropriate request.

At the hearing on petitioner's petition for writ of habeas corpus, Daniel Sullivan, a program assistant at Atascadero State Hospital, Dr. Papadopoulos and Dr. Davis unanimously were of the opinion that petitioner had not yet regained his sanity, and that he was still a menace to the health and safety of others. Then, for all practical purposes, the hearing became an inquiry into the question as to whether petitioner was receiving adequate treatment at the hospital. Daniel Sullivan admitted that petitioner's lack of cooperation since November 1975 was a symptom of his regression and that nothing was being done to control his uncooperative behavior. Dr. Papadopoulos opined that petitioner was receiving "no benefit" from the therapy program in which he was participating; he explained that if the staff cannot gain the cooperation of a patient, the patient will fail in any program he is placed in. It was the doctor's conclusion that petitioner needed "inspiration." Dr. Davis testified that petitioner's symptoms were acute, that he was not receiving adequate treatment for his mental illness and that a person with an acute psychosis similar to petitioner's is not in a position to be cooperative. The

doctor explained that the therapeutic process must start with gaining the cooperation of the patient and that the most common way of generalizing cooperative behavior was through the use of medication; he said that medication can bring a patient's distortions and delusions under control and make the patient amenable to other types of therapy. Dr. Davis was of the opinion that without medication petitioner had no chance for improvement.

At the conclusion of the hearing, the court announced that petitioner had not regained his sanity and that he was still a menace to the health and safety of others. The court ordered petitioner recommitted to the Department of Mental Hygiene for placement at the Atascadero State Hospital for at least one additional year.

At the outset, it cannot be denied that when petitioner's evidentiary hearing was held in the court below he still was suffering from a severe schizophrenic paranoid psychosis involving an extreme persecution complex. All of the expert witnesses unanimously were of the opinion that petitioner had not yet regained his sanity and that he was still a menace to the health and safety of others. In fact, at the hearing, petitioner himself practically admitted that he had not yet regained his sanity; he testified that he was not happy with his mental state and that he was willing to participate in any therapy program that did not involve the infliction of physical pain and was run by a therapist he could trust. ·

However, we are inclined to agree with petitioner's position that he is entitled to a judicial determination of the question as to whether he presently is receiving at the Atascadero State Hospital such individual treatment as will give him a realistic opportunity to be cured or to improve his mental condition, even though he did not expressly pray for such a determination in his initial petition filed in the court below. While the hearing in the superior court was initiated to determine whether petitioner had regained his sanity, it became, in reality, the platform for the presentation of testimony on the issue of whether petitioner was receiving at the hospital treatment that was within relevant constitutional bounds. Both court-appointed psychiatrists expressed the opinion that petitioner was receiving "no benefit" from the therapy program he was participating in; Daniel Sullivan, the program assistant at the hospital admitted that petitioner's lack of cooperation since November 1975 was a symptom of his regression and that nothing was being done to control

his behavior; Dr. Davis opined that without the medication which had been discontinued, petitioner had no chance for improvement. As the California Supreme Court succinctly explained in *People* v. *Feagley* (1975) 14 Cal.3d 338, 359 [121 Cal.Rptr. 509, 535 P.2d 373]: ". . . involuntary confinement for the 'status' of having a mental or physical illness or disorder constitutes a violation of the cruel and unusual punishment clauses of both the state and federal Constitutions (Cal. Const., art. I, § 17; U.S. Const., 8th & 14th Amends.) unless it is accompanied by adequate treatment. (*Robinson* v. *California* (1962) 370 U.S. 660, 665-667 [8 L.Ed.2d 758, 762-763, 82 S.Ct. 1417]; *In re Gary W.* (1971) *supra,* 5 Cal.3d 296, 301 [96 Cal.Rptr. 1, 486 P.2d 1201]; *In re De La O* (1963) 59 Cal.2d 128, 136 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *Martarella* v. *Kelley* (S.D.N.Y. 1972) 349 F.Supp. 575, 585, 598-600; *People* ex rel. *Kaganovitch* v. *Wilkins* (1965) 23 App.Div.2d 178 [259 N.Y.S.2d 462, 465-466].) 'When patients are so committed for treatment purposes they unquestionably have a constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. [Citations.] Adequate and effective treatment is constitutionally required because absent treatment, the hospital is transformed "into a penitentiary where one could be held indefinitely for no convicted offense." [Citation.] The purpose of involuntary hospitalization for treatment purposes is *treatment* and not mere custodial care or punishment.[1] This is the only justification, from a constitutional standpoint, that allows civil commitments to mental institutions . . . .' (*Wyatt* v. *Stickney* (M.D.Ala. 1971) 325 F.Supp. 781, 784, affd. sub. nom. *Wyatt* v. *Aderholt* (5th Cir. 1974) 503 F.2d 1305.)" (Italics in original.)

There is no merit to petitioner's remaining arguments.

■ Petitioner relies upon *People* v. *Marsden* (1970) 2 Cal.3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44], and *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726], to maintain that he is entitled to a new evidentiary hearing on all issues because the lower court summarily denied his request for a substitution of attorneys without affording petitioner the opportunity to relate his reasons for wanting a change. The lower court at no time cut off petitioner's right to state his reasons why he

---

[1]Petitioner was committed to a state mental hospital for care and treatment pursuant to the provisions of section 1026 of the Penal Code, and the confinement of persons committed under section 1026 is not intended to be punishment. (*In re Jones* (1968) 260 Cal.App.2d 906, 913 [68 Cal.Rptr. 32]; see also *Rouse* v. *Cameron* (D.C. Cir. 1966) 373 F.2d 451, 452-453 [125 App.D.C. 366].)

wanted to change attorneys. The court also made proper inquiry into Attorney Kahn's state of mind to determine if he could continue to represent petitioner. Also, about 17 days after petitioner's request was denied, he twice stated that he did not want Mr. Kahn removed as his counsel of record.

█ Petitioner asserts that he is entitled to a new hearing on the issue of the restoration of his sanity because the lower court failed to advise him that he had a right to a jury trial on that issue. Petitioner has confused a proceeding conducted under section 1026a of the Penal Code with a petition for writ of habeas corpus. Section 1026a is a proper vehicle for litigating the question as to whether a person previously declared to be insane has regained his sanity; under this section there is a right to a jury trial. (*In re Franklin* (1972) 7 Cal.3d 126, 148-149 [101 Cal.Rptr. 553, 496 P.2d 465].) Habeas corpus is also a proper vehicle to determine whether a person committed to a state hospital for mental treatment has regained his sanity. (See *People* v. *Superior Court* (1935) 4 Cal.2d 136, 145 [47 P.2d 724]; see also Welf. & Inst. Code, § 7250.) But, when the request for relief is grounded solely upon habeas corpus, the court, not a jury, resolves the factual questions. (Pen. Code, § 1484; *Smith* v. *Superior Court* (1965) 234 Cal.App.2d 1, 5-6 [43 Cal.Rptr. 869].)

Petitioner alleges that it was error for the court to recommit him to the Department of Mental Hygiene for placement in Atascadero State Hospital "for at least one additional year." He maintains that under section 1026a of the Penal Code, the superintendent of the hospital can make an application to determine whether an inmate has regained his sanity at any time, even though the inmate has made a similar application during the preceding 12 months. Because more than a year has elapsed since petitioner was recommitted, the issue is moot.

█ Let an order to show cause issue, returnable before the Superior Court of Kings County, at a time and place to be set by that court, with directions to conduct an evidentiary hearing on the question as to whether petitioner presently is receiving treatment at the Atascadero State Hospital which is within relevant constitutional bounds (i.e., such individual treatment as will give petitioner a realistic opportunity to be cured or to improve his mental condition).[2] The court further is directed

---

[2]In this regard, the court's function is to ". . . decide only whether the patient is receiving carefully chosen therapy which respectable professional opinion regards as

that if it finds on the basis of the evidence presented at that hearing that petitioner is not receiving treatment within relevant constitutional bounds, the court shall order the Department of Mental Hygiene to prepare and file with the court at a date certain a specific plan whereby treatment within relevant constitutional bounds will be provided to petitioner and shall order the Department of Mental Hygiene to implement and carry out the plan if, in light of the evidence previously presented and any additional evidence the parties desire to present, the plan sets forth therapy which respectable professional psychiatric opinion regards as within the range of treatment necessary to give petitioner a realistic opportunity to be cured or to improve his mental condition. Once such a plan is implemented, nothing said herein shall be construed to require the court to retain jurisdiction over the matter, or to limit the broad range of discretion vested in the Department of Mental Hygiene to change or modify petitioner's treatment without court approval so long as the changes and modifications are for petitioner's welfare and stay within relevant constitutional bounds. (See *Tribby* v. *Cameron* (D.C.Cir. 1967) 379 F.2d 104, 105; *Wyatt* v. *Stickney, supra,* 325 F.Supp. 781, 785-786; cf. *Williams* v. *Robinson* (D.C.Cir. 1970) 432 F.2d 637, 640-641 and 641, fn. 7.) In all other respects petitioner's petition for a writ of habeas corpus is denied.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied February 2, 1978, and the opinion was modified to read as printed above.

---

within the range of appropriate treatment alternatives, not whether the patient is receiving the best of all possible treatment in the best of all possible hospitals." (Bazelon, *Implementing the Right to Treatment* (1969) 36 U.Chi.L.Rev. 742, 745.)