[Civ. No. 19850. Fourth Dist., Div. Two. Oct. 12, 1978.]

In re ORLANDO ALFONSO COCA on Habeas Corpus.

494

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Patricia D. Benke, Deputy Attorneys General, for Appellant.

Ron Minkin for Respondent.

OPINION

MORRIS, J.—Appeal is from an order granting respondent Orlando Coca relief on his petition for writ of habeas corpus.

On March 3, 1975, respondent was placed on three years probation for conviction of sale of a controlled substance (amphetamines) (now Health & Saf. Code, § 11379). Probation was revoked on May 28, 1976, and respondent was sentenced to state prison.

On October 28, 1977, respondent filed a petition for writ of habeas corpus in the San Bernardino Superior Court, alleging that the Adult Authority of the State of California, the Department of Corrections, and the Vacaville Medical Facility had disobeyed a previous court order, thereby causing a deterioration of respondent's physical condition and inflicting cruel and unusual punishment. He requested transfer to a facility equipped to provide for his medical needs.

On November 29, 1977, appellant moved for a change of venue to Solano County on the ground that, since respondent was now confined in that county (at Vacaville) that was the proper county to adjudicate a petition for writ of habeas corpus based upon the conditions of his confinement. The motion was denied.

On February 1, 1978, at the conclusion of the hearing on the merits, the court ordered the Department of Corrections to comply with the previous (Sept. 24, 1976) order.[1] It further ordered that "regular irrigation shall be in a private room similar to that in Elm Hall [Chino] and that a toilet shall be installed adjacent to a suitable bathtub and that the operation of the bathtub shall be operated in a sanitary and a convenient manner; further, that regular times be assigned for private irrigation procedures to be performed by Orlando Coca. IT IS ORDERED THAT THIS ORDER BE CARRIED OUT BY: 1. Petitioner be transferred to Elm Hall, or 2. The aforesaid facilities be installed at Vacaville, or 3. Orlando A. Coca be released on parole." The matter was continued on calendar to require a report to the court as to the steps taken "to correct this matter." A 30-day stay of execution was granted. On March 22, 1978, a stay pending appeal was granted by this court.

---

[1]The September 24, 1976, order reads in pertinent part as follows: "That regardless of where ORLANDO A. COCA is incarcerated, he (1) shall be provided access to regular irrigation at a time certain every day, preferably early in the morning, to wit, 6:00 A.M. or that time vicinity, so that he can resume the routine which he had heretofore established; (2) shall be given immediate access to a bath tub for cleansing himself in the event of 'accidents or mishaps' and further that he shall not be required to wait hours before such access is given to him; and (3) shall be provided with a diet medically consistent with the problems from which he suffers."

In February 1974, prior to his prison commitment, respondent underwent abdominal surgery and a colostomy was performed. Because of the nature of his colostomy respondent is unable to wear an appliance, making it necessary for him to have special facilities for irrigation and elimination of waste.

Once inside the state correctional facilities problems were posed by respondent's medical condition. Respondent, alleging that he had been denied suitable medical care and treatment, sought a writ of habeas corpus. Following a hearing on an order to show cause, the court entered the original order (Sept. 24, 1976) requiring access to regular irrigation in the early morning hours and immediate access to a bathtub for cleansing in event of "accidents or mishaps."

At the time of this order respondent was incarcerated at the California Men's Colony at San Luis Obispo. Thereafter, he was transferred to the Vacaville facility and on October 28, 1977, the present petition was filed, contending that the care received at Vacaville was in violation of the September 24, 1976, order.

Respondent's testimony at the February 1, 1978, hearing on his present petition revealed the following facts concerning the availability and suitability of irrigation facilities: (1) The bathtub available for respondent's irrigation procedures is approximately seven feet long and is located in a room containing a urinal and wash basin. There is no toilet or other waste disposal equipment near the bathtub. There are two toilets fifteen feet away from the tub. (2) The room containing the tub is used by 35 to 40 other inmates. (3) No specific time period is allotted to respondent for use of the facilities, instead, he must wait his turn. Moreover, while he uses the tub the other facilities are available for use and are used by other inmates. (4) Because respondent must irrigate himself in a semi-reclining position in the tub, the excessive length of the tub causes him to slide down in the tub and into the waste material deposited there. (5) The presence of other inmates in the room when he is irrigating causes him mental distress which affects his physical ability to complete irrigation. This results in the water and waste not being expelled until unexpected times throughout the day. This in turn results in the need to have facilities available for cleansing immediately available at other times.

Dr. Ralph Prout, chief medical officer at Vacaville, testified that the medical facility at Vacaville provides the best medical facilities available

in view of respondent's security classification, which is medium (Elm Hall is for minimum security prisoners). He testified that they were in the process of providing a removable tub shortener, and a curtain arrangement to afford semi-privacy during irrigation. He further testified that a toilet facility would be of no advantage. However, when he was advised of respondent's testimony concerning the expelling of waste material into the tub and consequent clean-up problems, he testified that they could "look into the providing of special pans or special appliances or whatever that can minimize this problem." Dr. Prout also testified that the presence of other inmates could "affect the nervous system to the point where it would not activate the bowels within the ordinary length of time."

## I

■ Appellant first contends that the trial court erred in denying the motion to transfer the case to Solano County. ■ ■ Applicable rules for the guidance of superior courts in the exercise of their unlimited territorial jurisdiction in habeas corpus proceedings were articulated by the Supreme Court in *Griggs* v. *Superior Court* (1976) 16 Cal.3d 341 [128 Cal.Rptr. 223, 546 P.2d 727] as follows: "Although any superior court has jurisdiction to entertain and adjudicate a petition for the writ of habeas corpus, it does not follow that it should do so in all instances. As a general rule the court wherein the petition is presented must, if the petitioner has otherwise complied with pertinent rules, file the petition and determine whether it states a prima facie case for relief. If it does not, the petition should be denied. (*In re Swan* (1949) 34 Cal.2d 300. . . .) If the petition states a prima facie case for relief, then the court must determine whether it will hear the matter on the merits. If the challenge is to a particular judgment or sentence, the petition should be transferred to the court which rendered judgment if that court is a different court from the court wherein the petition was filed, in accordance with directions contained in our earlier decisions heretofore noted. If the challenge is to conditions of the inmate's confinement, then the petition should be transferred to the superior court of the county wherein the inmate is confined if that court is a different court from the court wherein the petition was filed." (*Id.,* at p. 347, fn. omitted.)

■ Relying on the final sentence in the above statement, appellant contends that since in the instant matter the challenge is to the conditions of respondent's confinement, the transfer should have been granted. Unfortunately for appellant's position, the petition alleged a prima facie case for relief based upon noncompliance with a previous order of the

San Bernardino Superior Court. Since, under the rules enunciated in *Griggs,* the decision to transfer must be based upon the challenge contained in the petition, the trial court was entitled to consider respondent's petition as not being wholly within either of the prescribed categories. Clearly the court issuing the initial order would be in the best position to determine compliance, yet because respondent was confined in a different county, the conditions of that confinement could best be explored in the court located in such county.

The rules enunciated in *Griggs* were not intended to cover all circumstances nor to be mechanistically applied. Rather, the Supreme Court clearly intended that they were to be used as guidelines by the superior courts in the exercise of a sound discretion based upon all of the circumstances in the case. The Supreme Court, recognizing that there will be petitions filed in which the relief sought does not fall within either of the listed categories gave further guidelines as follows: "We do not attempt herein to state a general rule or all-inclusive specific rules which direct the proper procedural disposition in each instance. We note, however, that unless there is substantial reason for transferring a petition it should be entertained and resolved in the court where filed. . . . That court should nevertheless not be precluded from transferring the petition should it appear, inter alia, that an evidentiary hearing is necessary and that the persons who will participate therein are more efficiently available to another court or that such other court is better situated to conduct a hearing." (*Id.,* at p. 347.)

In the instant matter the trial court's action in retaining jurisdiction was well within the guidelines established in *Griggs.* The petition involved the question of compliance with a prior court order emanating from the San Bernardino court. The primary factual matters to be presented at the hearing were the respondent's medical condition, the facilities necessary to accommodate his medical condition, and the facilities actually being provided. Since there was no dispute as to what facilities were being provided, there was no substantial reason for transferring the petition. We find no abuse of discretion in the denial of the motion to transfer.

## II

Appellant attacks the trial court order on the ground that it is not founded upon medical necessity, but rather upon convenience and psychological desirability. Appellant argues that since the existing

physical conditions under which respondent is confined are within the realm of acceptable medical diagnosis and treatment, the order requiring private toilet facilities and construction of an adjoining tub and toilet is improper.

■ By focusing on cases relating to medical "treatment," appellant finds authority for the proposition that the court need only decide whether a patient is receiving carefully chosen therapy which respectable professional opinion regards as within the range of appropriate treatment alternatives, not whether the patient is receiving the best of all possible treatment in the best of all possible hospitals. (*In re Ingram* (1978) 76 Cal.App.3d 495, 501-502, fn. 2 [142 Cal.Rptr. 825].)

Appellant has taken a too restricted view of the issue before the court. The principle cited is perfectly sound as applied to medical treatment. ■ However, we are not here concerned solely with treatment. Rather we are concerned with the physical aspects of respondent's confinement as it relates to his medical condition.[2] Both the initial petition for writ of habeas corpus and the petition that is the subject of the present appeal alleged that respondent is being subjected to cruel and unusual punishment in violation of both the United States and California Constitutions.

■ While the standard to be applied to determine whether punishment is cruel and unusual within the constitutional proscription is applicable whether we speak of medical treatment or conditions of confinement, the language adopted in connection with its application to medical "treatment" is too specialized to be helpful in defining the limits of humane conditions of confinement in the face of a serious medical condition.

■ In *Estelle* v. *Gamble* (1976) 429 U.S. 97 [50 L.Ed.2d 251, 97 S.Ct. 285], the court spoke in terms more helpful in evaluating the total circumstances of confinement. Although the Supreme Court was also concerned with cruel and unusual punishment in the context of a serious medical condition of a prisoner, the language used by the court was not

---

[2]Although the original petition for writ was couched in terms of "treatment for his illness" and the instant petition included references to medical care and treatment, it is apparent from the testimony at the hearing and the court order that the respondent's complaints were not that he had not received medication or needed therapy, but rather that the inadequacy of the physical facilities offered constituted cruel and inhuman punishment in light of his medical condition.

so particularized as to refer solely to "treatment." *Estelle* v. *Gamble* involved an action brought under the Civil Rights Act (42 U.S.C. § 1983) wherein a prisoner alleged that prison doctors and prison guards had acted with indifference to his serious medical needs. The court reviewed the history of the constitutional prohibition against cruel and unusual punishment and found that the more recent cases have held that the Eighth Amendment proscribes more than physically barbarous punishments. ■ "The Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . ,' [citation], against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' [citations], or which 'involve the unnecessary and wanton infliction of pain,' [citations]." (*Estelle* v. *Gamble, supra,* 429 U.S. at pp. 102-103 [50 L.Ed.2d at p. 259].) ■ The court concluded that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. (*Id.,* at p. 104 [50 L.Ed.2d at p. 260].)

■ Applying these principles to the evidence adduced at the hearing in the instant matter, we are convinced that the court could properly find that the conditions of respondent's confinement violated civilized standards of decency and involved the unnecessary infliction of pain.

It is concededly a difficult situation for the Department of Corrections when a person with a serious medical problem is committed for imprisonment. ■ Nevertheless, as we read the cases, the prison authorities must take the prisoner as they find him and provide facilities compatible with his physical condition that meet civilized standards of decency. ■ It is doubtful that appellant would contend that a modern prison would meet civilized standards if it failed to provide any bathing or toilet facilities or required the prisoners to bathe in the same facility in which they must defecate without providing any means of discharging the matter deposited. Yet, given respondent's physical condition, as described by him and confirmed by Dr. Prout, that is the practical effect of the failure to provide a suitable tub or tub and toilet facility.

Moreover, the respondent's testimony is undisputed that undue delay in the availability of the bathtub caused him to suffer discomfort and that the presence of other inmates made it physically impossible for him to complete irrigation, again causing him extreme discomfort.

We are not here confronted simply with "convenience and psychological desirability," as appellant suggests, but rather with conditions so primitive and barbarous as to totally fail to meet civilized standards of decency resulting in both psychological and physical pain.

It is not suggested that there was any intent to torture or that proper facilities were withheld in an attempt to punish the respondent. However, the failure to respond to respondent's call for help within a reasonable time is a failure that must be deemed a deliberate indifference to serious medical needs within the guidelines of *Estelle* v. *Gamble, supra,* 429 U.S. 97, 102 [50 L.Ed.2d 251, 258-259].

## III

Finally, appellant argues that even if the trial court could properly require the Department of Corrections to provide private tub and toilet facilities, the order issued improperly usurps the department's power over security and management of its institution.

We agree that, given respondent's security rating, the court could not properly order that he be placed in a minimum security facility such as Elm Hall; we agree that the court could not require the construction of particular facilities for respondent at Vacaville; and we agree that the court could not on these facts require respondent's release. The order, properly interpreted, does none of these things.

The September 24, 1976, order required that respondent be provided regular early morning access to irrigation facilities and that he be given immediate access to a tub for cleansing himself in case of mishaps. Clearly this order required facilities properly adapted for the purpose for which they were to be used and that they be accessible at a regular time without undue delay. As we have seen, the evidence demonstrates that there was no reasonable compliance with this order.

The order, which forms the basis of this appeal, does three things, to wit, (1) it reaffirms the September 24, 1976, order, (2) it expands it so that the privacy requirement, implicit in the first order, was explicitly stated, and (3) it authorizes alternative means of compliance. We conclude that the authorization for alternative methods of compliance are permissive rather than mandatory as appellant suggests simply because that interpretation is consistent with the general terms of the order that regular times be assigned for private irrigation procedures and the further order

continuing the matter for a report back to the court. Moreover, the transcript of the court's statement in open court supports this interpretation.

To remove any doubt that this is the import of the order, it is hereby ordered that the alternatives portion of the order be modified to provide that the order may be carried out by the suggested alternative methods or any other equivalent method.

As so modified the order appealed from is affirmed. The stay order entered on March 22, 1978, is hereby vacated.

Gardner, P. J., and Kaufman, J., concurred.