Dissent to Order by Judge O’SCANNLAIN; Opinion by Judge GRABER; Dissent by Judge IKUTA.
O’SCANNLAIN, Circuit Judge, joined by BYBEE, CALLAHAN, BEA, and IKUTA, Circuit Judges, dissenting from the denial of rehearing en banc:
ORDER
The opinion and dissenting opinion, filed on July 31, 2013, and published at 724 F.3d 1255, are replaced by the amended opinion and amended dissenting opinion filed concurrently with this order. With these amendments, Judges Bright and Graber have voted to deny the petition for panel rehearing, and Judge Ikuta has voted to grant it. Judge Graber has voted to deny the petition for rehearing en banc, and Judge Bright has so recommended. Judge Ikuta has voted to grant it.
The full court has been advised of the petition for rehearing en banc. A judge of the court called for a vote on whether to rehear the matter en bane. On such vote, a majority of the nonrecused active judges failed to vote in favor of en banc rehearing.
The petition for panel rehearing and petition for rehearing en banc are DENIED. No further petitions for panel rehearing or petitions for rehearing en banc shall be entertained.
Today, a panel of our Court disregards the “strong considerations of comity” between federal courts and the States, grasping power for itself where it is “difficult to imagine ... a State has a stronger interest.” Preiser v. Rodriguez, 411 U.S. 475, 491-92, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). To reach this result, the panel misapplies Supreme Court precedent and creates a split with the Seventh Circuit, as described in Judge Ikuta’s compelling dissent. I write to emphasize the important federalism and practical concerns that warranted rehearing this case en banc.
I
The central question in this appeal is whether William Cecil Thornton may challenge his parole conditions under 42 U.S.C. § 1983 or whether he must instead petition for a writ of habeas corpus. To a casual observer, this issue may appear trivial, but as the relevant statutory framework and Supreme Court precedents make clear, the answer to this question directly implicates our constitutional system’s respect for state sovereignty and the limitations Congress has placed on federal judicial power.
As the Supreme Court has observed, federal habeas review “frustrates both the States’ sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.” Calderon v. Thompson, 523 U.S. 538, 555-56, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (internal quotation marks omitted). When a federal court has authority to review state criminal matters, it “intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting Harris v. Reed, 489 U.S. 255, 282, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (Kennedy, J., dissenting)).
In order to “confirm that state courts are the principal forum for asserting constitutional challenges” to state confinement, Congress has dramatically restricted federal habeas review. Id. A petitioner *837 seeking a writ from a federal court must “first attempt to present his claim in state court.” Id. Moreover, a federal court can issue a writ of habeas corpus only where a state court’s judgment “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States” or “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(l)-(2). In this way, Congress has curtailed federal judicial interference with a State’s “sovereign power to punish offenders.” Thompson, 523 U.S. at 555, 118 S.Ct. 1489.
By contrast, the power of federal courts in § 1988 suits is far greater — and the intrusion on state sovereignty far more significant. Unlike a habeas petitioner, a plaintiff suing under § 1983 bypasses the state court system and goes directly to federal court. Patsy v. Bd. of Regents, 457 U.S. 496, 500-01, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); Steffel v. Thompson, 415 U.S. 452, 472-73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Absent is the notion that “state proceedings are the central process,” as they are in the habeas context. Richter, 131 S.Ct. at 787. And whereas federal habeas review entails deference to a state court judgment unless that judgment is “beyond any possibility for fairminded disagreement,” id., no such deference to the States exists in § 1983 suits. For these and other reasons, § 1983 suits involve “a basic problem of American federalism,” Monroe v. Pape, 365 U.S. 167, 222, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting), and this is especially true in the context of state penal systems. Cf. Thompson, 523 U.S. at 555, 118 S.Ct. 1489.
Against this background, the implications of the panel’s decision for state sovereignty are obvious. State decisions about parole conditions will now be subject to far-reaching and searching review by federal courts in our circuit. Rather than reserving federal judicial intervention for cases of “extreme malfunctio[n]” of state penal systems, as is the case with habeas review, Burt v. Titlow, — U.S. -, 134 S.Ct. 10, 16, 187 L.Ed.2d 348 (2013) (alteration in original) (quoting Richter, 131 S.Ct. at 786), federal judicial involvement in the setting of parole conditions will now become routine. As Judge Ikuta’s dissent convincingly argues, challenges to parole conditions fall within the purview of the federal habeas statute, with all its attendant limitations on our power. By instead permitting such challenges to be brought under § 1983, the panel has worked “a major new intrusion into state sovereignty under our federal system,” Maine v. Thiboutot, 448 U.S. 1, 33, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (Powell, J., dissenting), something Congress expressly sought to avoid.
II
The consequences of the panel’s decision go beyond its disregard of fundamental federalism principles. One of the key differences between habeas and § 1983 actions is that the latter holds out the prospect of attorney’s fees for a prevailing plaintiff. See 42 U.S.C. § 1988(b). As federal courts have observed on numerous occasions, awarding attorney’s fees in § 1983 litigation encourages would-be plaintiffs to bring suits that might otherwise never make it into court because counsel have a financial incentive to undertake such cases. See, e.g., Dennis v. Chang, 611 F.2d 1302, 1306-07 (9th Cir. 1980). That incentive is conspicuously lacking in habeas actions, which means that the likely effect of the panel’s decision will be a rush of parolees to the federal courthouse steps.
*838 Given the predictable increase in § 1983 litigation the panel’s opinion will produce, one would expect the panel to articulate how litigants and district courts will determine when a challenge must be brought in habeas. But the panel remains coy, offering only hints at what may or may not be relevant considerations in future cases. The panel’s proffered standard is a mystery, one that the district courts of this circuit must struggle now to solve.
I respectfully dissent from our regrettable decision not to rehear this case en banc.
OPINION
GRABER, Circuit Judge:
In this civil rights action under 42 U.S.C. § 1988, Plaintiff William Cecil Thornton brings a constitutional challenge to the imposition and enforcement of two conditions of his parole: a residency restriction and a requirement that he submit to electronic monitoring using a Global Positioning System (“GPS”) device. Citing Preiser v. Rodriguez, 411 U.S. 475, 489-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and Heck v. Humphrey, 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the district court concluded that habeas corpus provided the exclusive federal remedy for Plaintiffs claims and dismissed the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.
The Supreme Court has not directly considered the application of the Heck doctrine to § 1983 actions that challenge conditions of parole. Among the courts of appeals, only the Seventh Circuit has done so, in Drollinger v. Milligan, 552 F.2d 1220 (7th Cir.1977), which considered conditions of probation, and Williams v. Wisconsin, 336 F.3d 576 (7th Cir.2003), which considered conditions of parole. Consistent with Supreme Court precedent and that of our sister circuit, we hold that such an action is not barred by Heck if it is not a collateral attack on either the fact of a parolee’s confinement as a parolee or the parolee’s underlying conviction or sentence. Because we conclude that Plaintiffs action is not such an attack, we reverse and remand.
BACKGROUND
California’s Sex Offender Registration Act requires certain convicted sex offenders to register with law enforcement officials in the communities in which they reside. Cal.Penal Code §§ 290(c), 290.005(a). California’s Sexual Predator Punishment and Control Act of 2006 — also known as Jessica’s Law or Proposition 83 — imposes several requirements that apply to parolees who, as sex offenders, are subject to that duty to register. One of those requirements is a residency restriction according to which a person who is required to register may not “reside within 2000 feet of any public or private school, or park where children regularly gather.” Id. § 3003.5(b). Another requirement is that any person who is convicted of a “registerable sex offense” as defined by section 290(c) — a section which enumerates various sex offenses under California law — must submit to electronic monitoring by a GPS device, either for the duration of that person’s parole or for life. Id. §§ 3000.07(a), 3004(b). The state’s Department of Corrections and Rehabilitation (“the Department”) also has discretionary authority to require any parolee to submit to electronic monitoring. See id. § 3010(a) (providing that “the [Department] may utilize continuous electronic monitoring to electronically monitor the whereabouts of persons on parole”).
In 2011, a California trial court ruled that section 3003.5(b)’s residency restriction, when applied to all registered sex offenders as a “blanket” parole condition, was unconstitutional. In re Taylor, 147 *839 Cal.Rptr.3d 64, 67-68 (Ct.App.2012). The appellate court affirmed the lower court’s order, which prohibited the “blanket enforcement of the residency restriction”; but the court also held that the Department “may, after consideration of a parolee’s particularized circumstances, impose a special parole condition that mirrors section 3003.5(b) or one that is more or less restrictive.” Id. at 83-84.[1]
In 1987, Plaintiff pleaded guilty in Tennessee to sexual battery. In 2006, he was convicted in California of buying or receiving stolen property and was sentenced to a 16-month term of imprisonment. California law requires a period of parole or supervised release following such a prison term, CaLPenal Code § 3000, and when Plaintiff was released in June 2008, he received a three-year parole term. Citing Plaintiffs previous Tennessee offense, the Department imposed, as parole conditions, a GPS monitoring requirement (pursuant to section 3010 of the Penal Code) and a residency restriction prohibiting him from living within 2000 feet of schools or parks where children gather (pursuant to section 3003.5(b)). Plaintiff was later convicted of robbery and was sentenced to a three-year prison term for that offense, pursuant to California Penal Code section 1170. Again, California law required a term of parole to follow his sentence. CaLPenal Code § 3000. While he was in prison, the Department issued new parole conditions that would apply upon his release. Those conditions included the same GPS monitoring requirement and residency restriction.
During his second prison term, Plaintiff filed this action under 42 U.S.C. § 1983, seeking both monetary and injunctive relief. He alleges that the Department violated his constitutional rights by imposing the GPS monitoring requirement and residency restriction as parole conditions and by enforcing those conditions in an arbitrary or discriminatory manner. The district court reasoned that, as a parolee, Plaintiff was “in custody” within the meaning of the federal habeas corpus statute, 28 U.S.C. § 2254. It further reasoned that, under the Heck doctrine, a habeas petition is the exclusive means by which Plaintiff can challenge a condition of his parole. Accordingly, the district court dismissed the claim.
Plaintiff timely appeals. We review de novo the legal issues presented here. Barker v. Riverside Cnty. Office of Educ., 584 F.3d 821, 824 (9th Cir.2009).
DISCUSSION
A. Immunity
Plaintiffs claims against the Governor, the Secretary of Corrections, and a Parole Unit Supervisor are limited to injunctive relief. See Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing Eleventh Amendment considerations and holding that § 1983 does not permit suits for damages against states); Doe v. Lawrence Livermore Nat’l Lab., 131 F.3d 836, 839 (9th Cir.1997) (holding that “state officials sued in their official capacities are not ‘persons’ within the meaning of § 1983” except when “sued for prospective injunctive relief”). Neither absolute nor qualified immunity bars Plaintiffs claims against those defendants. See, e.g., Buckwalter v. Nev. Bd. of Med. Exam’rs, 678 F.3d 737, 747 (9th Cir.2012) (“Absolute immunity is not a bar to injunctive or declaratory relief.”); Vance v. Barrett, 345 F.3d 1083, 1091 n. 10 (9th Cir.2003) (“[A] defense of qualified immunity is not available for prospective injunctive relief.”).
Absolute immunity does bar Plaintiffs claims for damages against his parole *840 officers for imposing allegedly unconstitutional parole conditions. We have held that absolute immunity “extend[s] to parole officials for the ‘imposition of parole conditions’ ” because that task is “integrally related to an official’s decision to grant or revoke parole,” which is a “quasi-judicial” function. Swift v. California, 384 F.3d 1184, 1189 (9th Cir.2004) (quoting Anderson v. Boyd, 714 F.2d 906, 909 (9th Cir.1983)). Both parole conditions currently in effect were imposed through particularized and discretionary decisions by parole officers. The GPS condition was imposed pursuant to the Department’s discretionary authority under section 3010 of the California Penal Code,[2] and the residency restriction “mirrors” section 3003.5(b), which, as interpreted by the California courts, permits such a condition only “after consideration of a parolee’s particularized circumstances.” Taylor, 147 Cal.Rptr.3d at 83-84. Accordingly, the parole officers are absolutely immune with respect to Plaintiffs claims for damages arising from the imposition of those conditions.
Absolute immunity does not extend, though, to Plaintiffs claim that the parole officers enforced the conditions of his parole in an unconstitutionally arbitrary or discriminatory manner. Parole officers’ “immunity for conduct arising from their duty to supervise parolees is qualified.” Anderson, 714 F.2d at 910. Plaintiffs allegation that the officers enforced the residency restriction against him but not against similarly situated parolees relates to the manner in which Defendants implemented that condition — an element of their supervisory function. Absolute immunity therefore does not apply to Plaintiffs enforcement-based claim. However, the district court also dismissed this claim as barred by qualified immunity. On appeal, Plaintiff does not challenge that ruling except to the extent that it bars him from pursuing injunctive relief. Because qualified immunity does not bar injunctive relief, Vance, 345 F.3d at 1091 n. 10, Plaintiff may assert his non-monetary claim arising from the allegedly discriminatory enforcement of his parole conditions.
B. Heck Doctrine
With respect to his claims for injunctive relief, the question remains whether Plaintiff appropriately brought those claims under § 1983 instead of through a petition for habeas corpus.
Persons subject to state custody generally “have two potential avenues to remedy violations of their federal constitutional rights: a habeas petition under 28 U.S.C. § 2254, and a civil suit under 42 U.S.C. § 1983.” Osborne v. Dist. Attorney’s Office, 423 F.3d 1050, 1053 (9th Cir. 2005) (citing Heck, 512 U.S. at 480, 114 S.Ct. 2364). In Preiser, the Supreme Court addressed “ ‘the extent to which § 1983 is a permissible alternative to the traditional remedy of habeas corpus,”’ Docken v. Chase, 393 F.3d 1024, 1027 (9th Cir.2004) (quoting Preiser, 411 U.S. at 500, 93 S.Ct. 1827), and held that § 1983 implicitly excludes from its coverage claims that lie “within the core of habeas corpus,” Preiser, 411 U.S. at 487-88, 93 S.Ct. 1827.[3] *841 Thus, a person who is in state custody may not use § 1983 to challenge “the very fact or duration of ... confinement” by seeking “a determination that he is entitled to immediate release or a speedier release from that imprisonment” — for example, an injunction requiring prison officials to grant good-time credits that would shorten his prison term. Id. at 499-500, 93 S.Ct. 1827. In Heck, the Court elaborated on the exception set forth in Preiser, holding that a state prisoner may not maintain a § 1983 claim for damages if “a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence” with respect to a prior judgment that has not been nullified previously. Heck, 512 U.S. at 484, 487, 114 S.Ct. 2364.
Not all claims that are cognizable in habeas are precluded from § 1983’s scope under that standard; rather, there are “instances where the same constitutional rights might be redressed under either form of relief.” Wolff v. McDonnell, 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); see also Osborne, 423 F.3d at 1055 (rejecting “the notion that a claim which can be brought in habeas must be brought in habeas”).[4] Thus, the fact that a § 1983 plaintiff is “in custody” and therefore may file a habeas petition challenging the unlawfulness of that custody does not, by itself, determine whether the § 1983 claim is available. Instead, a claim that meets the statutory criteria of § 1983 may be asserted unless its success would release the claimant from confinement or shorten its duration, Preiser, 411 U.S. at 500, 93 S.Ct. 1827, or would necessarily imply the invalidity of the conviction or sentence, Heck, 512 U.S. at 487, 114 S.Ct. 2364. See also Wilkinson v. Dotson, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (explaining that Preiser and Heck bar a § 1983 claim only if that claim will either result in a “speedier release” from custody or “a judicial determination that necessarily implies the unlawfulness of the State’s custody”).[5]
A state parolee is “in custody” for purposes of the federal habeas statute, Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and may challenge parole conditions imposed by a state correctional department through a habeas petition under 28 U.S.C. § 2241, Bagley v. Harvey, 718 F.2d 921, 922-23 (9th Cir.1983). But neither we nor the Supreme Court has addressed previously whether, or under what circumstances, Heck’s implicit exception to § 1983 applies to such a claim. Here, we hold that Plaintiffs claims, which challenge two parole conditions, do not fall within that exception, because a judgment enjoining enforcement of his GPS monitoring requirement and residency restrictions will neither affect the “fact or duration” of his parole nor “necessarily imply” the invalidity of his state-court conviction or sentence.
*842 The only federal court of appeals to have decided how Heck applies to the conditions of a non-physical form of custody is the Seventh Circuit, which addressed the issue in Drollinger, 552 F.2d 1220. In dismissing a state probationer’s § 1983 claim challenging a condition of her probation, that court identified the crux of the issue: “Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred.”[6] Id. at 1225. However “blurred” this line might appear at first blush, in California a parolee’s status is legally and factually distinct from his conditions of parole. “In California, parolee status carries distinct disadvantages when compared to the situation of the law-abiding citizen.” People v. Lewis, 74 Cal.App.4th 662, 88 Cal.Rptr.2d 231, 236 (1999). A parolee remains a “prisoner” under California law and is subject at all times to the jurisdiction of the Department, which may impose or alter conditions at will for the duration of the term of parole.[7] Id. The conditions imposed by the Department, like those challenged here, are simply an exercise of that jurisdiction, which remains unaffected by even a successful challenge to particular conditions placed on the parolee.[8]
Moreover, the distinction between the “fact” and “duration” of imprisonment, on the one hand, and the “conditions” of imprisonment, on the other hand, is a distinction that Supreme Court precedent has created: a prisoner may challenge the “fact” or “duration” of imprisonment only through a habeas proceeding, but may challenge “conditions” of confinement in an action under § 1983. Heck, 512 U.S. at 480-81, 114 S.Ct. 2364; Preiser, 411 U.S. at 500, 93 S.Ct. 1827. Nor is it difficult to apply that distinction in most cases. See, e.g., Roles v. Maddox, 439 F.3d 1016, 1017-18 (9th Cir.2006) (holding that a challenge to the confiscation of magazines in prison pertains to a condition of confinement, which is properly brought under § 1983, and collecting cases); Nonnette v. Small, 316 F.3d 872, 875 (9th Cir.2002) (“It has been clear for over thirty years that a state prisoner seeking injunctive relief against the denial or revocation of good-time credits must proceed in habeas corpus, and not under § 1983.”); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir.2002) (holding that a claim concerning harassment by prison guards is a challenge to a condition of confinement, which is properly brought under § 1983). The same line must be drawn for parole as for incarceration because, as explained above, in California parole is simply a less onerous form of imprisonment and the parolee is still considered a prisoner.
*843 Here, Plaintiff does not challenge his status as a parolee or the duration of his parole and, even if he succeeds in this action, nearly all of his parole conditions will remain in effect. Those conditions include drug and alcohol testing and treatment; psychiatric and behavioral counseling; limitations on travel, employment, association with certain individuals, patronage of certain businesses, and the use of motor vehicles; a curfew; numerous sex-offender registration requirements; a duty not to contact his robbery victim; and other restrictions. In these circumstances, we hold that his challenge to two parole conditions does not threaten his “confinement” as a parolee. See Jones, 371 U.S. at 242-43, 83 S.Ct. 373 (explaining that a parolee’s “release” into the custody and control of the Parole Board “involves significant restraints on [the parolee’s] liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally”). Thus, even if the line between conditions of confinement and the fact thereof may be “blurred” in some cases, it is clear that Plaintiffs claims in this case do not seek “speedier release” from his confinement within the meaning of Preiser’s exception to § 1983.[9]
Moreover, because Plaintiff challenges only the discretionary decisions of the Department in imposing the GPS monitoring and residency restrictions, his success would not imply the invalidity of his conviction or sentence. The focus of the Supreme Court’s inquiry in Heck was whether a plaintiffs success on a § 1983 claim would call into question a state court’s judgment. See Heck, 512 U.S. at 484-86 & n. 4, 114 S.Ct. 2364 (relying on a common-law rule against “collateral attack on [a criminal] conviction through the vehicle of a civil suit” and determining that “ § 1983, which borrowed general tort principles, was not meant to permit such collateral attack” (internal quotation marks omitted)). We have held that a claim does not “necessarily imply” the invalidity of a conviction or sentence under Heck unless its success will “inevitably” call into question the state court judgment that led to the plaintiffs custody. Osborne, 423 F.3d at 1055 (citing Dotson, 544 U.S. at 78-82, 125 S.Ct. 1242). Consistent with this view, the Seventh Circuit, in Drollinger, concluded that habeas relief was the exclusive relief available to challenge a probation condition imposed under Indiana law only after determining that, under state law, the challenged condition was part of the sentence imposed by the state court:
Our analysis of the Indiana statutes authorizing the granting of probation demonstrates [that] ... [i]n placing a defendant on probation the trial court is required to impose conditions concerning the manner in which the defendant must conduct himself.... [The plaintiffs] challenge to the conditions of her probation is, therefore, an attack on the sentence of the trial court.
552 F.2d at 1224-25 (citations omitted).[10]
This case is distinguishable from Drol-linger, though, because the parole conditions that Plaintiff challenges were not *844 imposed as part of a court judgment. Rather, the Department imposed the GPS monitoring requirement pursuant to its discretionary authority under section 3010 of the Penal Code, and the Department imposed the residency restriction pursuant to the individualized assessment permitted by section 3000.5(b), as interpreted in Taylor, 147 Cal.Rptr.3d at 67-68. Even if successful, Plaintiffs claims will have no effect on his criminal sentence, including the duration of his parole. Because Plaintiff challenges only the discretionary decisions of an administrative body, it is unlike the Indiana probation condition considered in Drollinger.[11] And because a judgment in Plaintiffs favor would neither shorten nor alter any sentence or judgment of a state court, it is unlike the administrative proceedings relating to good-time credits that were at issue in Preiser. Cf. Dotson, 544 U.S. at 82, 125 S.Ct. 1242 (holding that Preiser’s exception does not bar a § 1983 claim seeking “relief that will render invalid the state procedures” that relate to a prisoner’s custody but would not necessarily require early release from the prison sentence). Because his challenge to discretionary decisions of the Department will not affect his court-imposed prison term or result in release from parole, Plaintiffs possible success in this action would not “necessarily imply” the invalidity of any state-court judgment.[12] We need not and do not decide whether we would reach a different result had the Department merely implemented a parole condition that was required by statute as a direct consequence of a court’s judgment of conviction or sentence.
*845 Furthermore, because Plaintiffs claim, had it been brought in habeas, likely would proceed under § 2241, see Bagley, 718 F.2d at 922-23, it is a type of habeas claim to which no court has previously extended Preiser’s implicit exception to the text of § 1983.[13] We do not rely on this technical distinction between § 2241 and § 2254 of the habeas statute in reaching our decision, but we note that the same consideration drives our reasoning: that Plaintiff does not challenge a judgment of conviction or a sentence. Compare 28 U.S.C. § 2254(a) (providing habeas relief for unlawful “custody pursuant to the judgment of a State court”) with id. § 2241(c) (providing relief for other forms of unlawful custody).[14] We need not and do not decide whether the availability of a § 2241 claim may ever bar a parolee from proceeding under § 1983. It is sufficient that, here, the same reasons that would place Plaintiffs claim within the scope of § 2241 also demonstrate that it is not “a collateral attack on [a] conviction [or sentence] through the vehicle of a civil suit,” Heck, 512 U.S. at 484, 114 S.Ct. 2364, and is therefore different in kind from the types of habeas claims for which the Supreme Court has determined that habeas relief is exclusive.
The dissent asserts that our decision will “muddle the clear line Heck and Dotson drew,” and run contrary to Skinner v. Switzer, — U.S. -, 131 S.Ct. 1289, 1298 n. 12, 179 L.Ed.2d 233 (2011). Amended dissent at 31 (internal quotation marks omitted). What the dissent neglects is that the “clear line” that the Supreme Court referred to -in Skinner is the rule that Heck bars a § 1983 action only if the action’s success will necessarily imply the invalidity of a state court’s judgment. Id. at 1298-99 (permitting a prisoner’s § 1983 claim that sought potentially exonerating DNA testing because success would not “necessarily” imply the invalidity of the prisoner’s conviction); see also Nelson v. Campbell, 541 U.S. 637, 647, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004) (“[W]e were careful in Heck to stress the importance of the term ‘necessarily.’ ”). Here, we adhere to the Supreme Court’s “clear line.” Because his success in this action would not necessarily imply the invalidity of either his conviction or sentence, Plaintiff may proceed under § 1983.
In sum, we hold that a state parolee may challenge a condition of parole under § 1983 if his or her claim, if successful, would neither result in speedier release *846 from parole nor imply, either directly or indirectly, the invalidity of the criminal judgments underlying that parole term. Because Plaintiff challenges two parole conditions, which were imposed through a discretionary decision of the Department, his success would do neither, and Heck does not bar him from proceeding under § 1983.
REVERSED AND REMANDED.

. The California Supreme Court has granted the state's petition for review of that ruling. In re Taylor, 150 Cal.Rptr.3d 566, 290 P.3d 1171 (2013).

. Although sections 3000.07(a) and 3004(b) of the Penal Code require the Department to impose a GPS monitoring condition for any parolee convicted of a "registerable sex offense” under section 290(c), that subsection lists only crimes under California law. Thus, Plaintiff’s condition, which relates to a conviction under Tennessee law, reflects an exercise of the Department’s discretion under section 3010.

. The Supreme Court rested this conclusion on its observation that “the language of the habeas statute is more specific, and the writ’s history makes clear that it traditionally 'has been accepted as the specific instrument to *841 obtain release from [unlawful] confinement.' ” Wilkinson v. Dotson, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (alteration in original) (quoting Preiser, 411 U.S. at 486-87, 93 S.Ct. 1827).

. See also Preiser, 411 U.S. at 499, 93 S.Ct. 1827 (noting that habeas and § 1983 may provide alternative means to challenge prison conditions); Skinner v. Switzer,- U.S. -, 131 S.Ct. 1289, 1299, 179 L.Ed.2d 233 (2011) (raising, without deciding, the question whether “habeas [is] the sole remedy, or even an available one,” for certain types of claims).

. We discern little, if any, disagreement between our and the dissent’s understandings of these governing principles. The dissent discusses the facts of Dotson in some detail, but we do not find those facts particularly relevant to this case. In Dotson, the plaintiffs were prisoners who sought, in a § 1983 action, relief that would have entitled them to a new parole hearing. They did not challenge any parole conditions that might accompany their eventual release from prison.

. It bears noting that Drollinger involved a challenge to a condition of probation, a status that the Supreme Court has held to be less akin to imprisonment than parole. Samson v. California, 547 U.S. 843, 850 & n. 2, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) ("As we noted in [United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001))], parolees are on the 'continuum' for state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment.”

. See, e.g., California Department of Corrections and Rehabilitation Operations Manual 81010.16.1-19.1 (Jan. 1, 2013) (providing that a parole agent has the authority to modify or impose new special conditions orally, at any time, as long as written notice is provided to the parolee within five days).

.Indeed, a contrary view would lead to an arbitrary incongruity in the scope of available remedies: Prisoners would have two potential means to challenge aspects of their custody, whereas parolees would have only one. We see no need to allow the Preiser exception to swallow the rule that § 1983's broad text provides a remedy for unlawful conditions of confinement.

. We need not and do not decide whether we would reach a different result were Plaintiff challenging all or a substantial portion of his parole conditions. The dissent declares our holding "unworkable” because a parolee’s challenge to 5, 7, or more parole conditions arguably could amount to a challenge to the fact of his or her parole itself. Like the dissent, we eschew a numerical approach, and we do not rely on the number of conditions challenged to reach our holding. We merely note that Plaintiff’s challenge is quite narrow and is focused on the nature of specific conditions of parole, rather than on his parole’s existence or its duration.

. Drollinger was decided before the Supreme Court issued Heck, so the Seventh Circuit did *844 not have the benefit of that later decision, which explained Preiser in light of a policy of preventing implicit collateral attack on state criminal judgments. But the Seventh Circuit limited its holding to probation conditions that, under state law, were part of the sentencing court’s judgment. Thus, Drollinger is consistent with Heck.

. The Seventh Circuit’s statement in Williams that Preiser probably barred a § 1983 challenge to numerous parole conditions extended Drollinger's rule for probation conditions to the parole context without explaining why that extension was justified. Williams, 336 F.3d at 579-80. In particular, in Williams, the court concluded without discussion that under the state law in question, parole did not exist apart from its conditions. But as noted, under California law, the status of parole does exist, and has legal consequences, wholly apart from conditions imposed by the Department. Moreover, the court in Williams did not address whether the conditions that the parolee challenged were part of the state court’s judgment or were instead, as in this case, discretionary conditions imposed by an executive authority. To the extent that our holding is in tension with the Seventh Circuit’s decisions in Drollinger and Williams, we simply are not persuaded by them.

. The dissent interprets California law, as we do, to provide the Department with the discretionary authority to choose and impose parole conditions. Amended dissent at 847-48; see also Kevin R. v. Superior Court, 191 Cal.App.4th 676, 120 Cal.Rptr.3d 549, 554 (2010) (“The power to grant parole, including setting parole conditions, is vested in the board, not the courts.”). Unlike us, though, the dissent concludes that in challenging those discretionarily selected parole conditions, Plaintiff "is challenging a statutorily-mandated component of his sentence.” Amended dissent at 848. We do not agree that such a conclusion follows. Just as authority is vested in the Department to administer prisons and set prison conditions, so, too, the Department has the authority to administer the parole system, including the imposition and modification of parole conditions. This authority is wholly distinct from the sentencing authority of a state court and does not per se implicate any state court judgment. See In re Coca, 85 Cal.App.3d 493, 149 Cal.Rptr. 465, 471 (1978) (noting that a court would usurp the Department’s administrative authority to require, for example, new prison facilities to be built).

. Generally, decisions in which courts have applied Preiser to bar a § 1983 claim have specifically noted the applicability of 28 U.S.C. § 2254. See, e.g., Heck, 512 U.S. at 480, 114 S.Ct. 2364 ("This case lies at the intersection of ... 42 U.S.C. § 1983[] and ... 28 U.S.C. § 2254.”); Preiser, 411 U.S. at 477, 93 S.Ct. 1827 (“[T]he federal habeas corpus statute, 28 U.S.C. § 2254, clearly provides a specific federal remedy.”); Osborne, 423 F.3d at 1053 (noting that the claim at issue was cognizable under § 2254); Ramirez v. Galaza, 334 F.3d 850, 854 (9th Cir.2003) (same); Neal v. Shimoda, 131 F.3d 818, 823 (9th Cir. 1997) (same); Fierro v. Gomez, 77 F.3d 301, 304 (9th Cir. 1996) (same); see also McQuillion v. Schwarzenegger, 369 F.3d 1091, 1094 (9th Cir.2004) (noting the plaintiff's concurrent § 2254 habeas action).

. We have drawn a similar distinction between habeas claims by federal prisoners against federal parole determinations and those that challenge the original sentence. See Izsak v. Sigler, 604 F.2d 1205, 1206 n. 1 (9th Cir. 1979) ("Habeas corpus, an attack on the legality of incarceration and not a collateral attack on judgment, is the proper vehicle for attacking Parole Commission action. Andrino v. United States Board of Parole, 550 F.2d 519 (9th Cir.1977) [(per curiam)]. A collateral attack on the sentence imposed brought under 28 U.S.C. § 2255 will not lie.”); Andrino, 550 F.2d at 520 (holding that a habeas petition under § 2241 is the appropriate vehicle for such attacks).